*Mr. Ansel,* for the motion.

*Mr. Featherstone,* contra.

---

### BROWN v. THE BANK OF SUMTER.

1. APPEAL.—THIS COURT on appeal cannot consider any fact not properly before the Circuit Court, even when agreed to by counsel.

2. MORTGAGES—PRESUMPTION—REBUTTAL—SALE.—A DEED appearing on its face to be an absolute sale will be presumed to be what it appears to be, unless such presumption be rebutted by clear, unequivocal, and convincing proof.

3. MORTGAGES—SALE—EVIDENCE.—Whether a transaction was intended as a mortgage or as an absolute sale, with agreement allowing vendor to repurchase, depends upon the intention of the parties as shown upon the face of the writings, or by extrinsic evidence.

4. PLEADINGS—DEMURRER—ANSWER—DEFENSE.—WHERE A COMPLAINT alleges that a deed absolute on its face was intended as a mortgage, the answer denying this and alleging the contrary is not amenable to demurrer on the ground that it does not state facts sufficient to constitute a defense.

5. MORTGAGES—MORTGAGOR AND MORTGAGEE—SALE.—NO CONSIDERATION other than the mortgage debt is necessary to sustain a sale of mortgaged lands or part thereof by mortgagor to mortgagee at price less than mortgage debt.

6. IBID.—SALE—EVIDENCE.—A provision in an absolute deed in consideration of the mortgage debt, that the original mortgages are left open to protect grantee against encumbrances and dower, does not show that deed was intended as a mortgage, but the contrary.

7. SALE—EVIDENCE.—THE DEED and agreement to sell to grantor, when taken together, show that the deed was intended as an absolute conveyance, with privilege of repurchase by grantors at specific prices.

8. IBID.—IBID.—POWER OF ATTORNEY—WORDS AND PHRASES.—The terms used in the power of attorney, under which deed in question was executed, show that the intention of grantor was to sell, and not to mortgage. The words "dispose of," held not to include the power to mortgage.

Before WATTS, J., Sumter, June, 1898. Affirmed..

Action to declare a deed a mortgage by Lilie H. Brown and Robert O. Purdy, as trustees and representatives of Albertus S. Brown and W. Alston Brown, individually and as surviving partner of A. S. and W. A. Brown, against The, Bank of Sumter and Marion Moise, on the following complaint:

I. That the defendant, the Bank of Sumter, is a corporation duly created under and by the laws of the State of South Carolina. II. That at the times hereinafter mentioned the plaintiffs were and now are, for the purposes of liquidation, corporators doing business under the firm name of A. S. & W. A. Brown. III. That the defendant, Marion Moise, was at the times hereinafter mentioned and now is one of the directors and vice-president of the corporation, the Bank of Sumter. IV. That on the 26th day of March, 1895, the plaintiffs, under their firm name of A. S. & W. A. Brown, by their notes discounted in said bank or otherwise, were indebted to the Bank of Sumter in a considerable sum, the items of which they are unable to state, amounting to $13,500, and claimed by said bank to be $14,500; that said indebtedness was secured by several mortgages, to wit: one of the "Providence Place," the individual property of A. S.

Brown; one of the "DuBose Land," the joint property of
Albertus S. Brown and W. Alston Brown; one of the
"Rocky Pine" place, the individual property of W. Alston
Brown; one of the interest of Albertus S. Brown in certain
lots of land in the city of Sumter, and a mortgage given by
the said Albertus S. Brown to W. F. B. Haynsworth, and
assigned to said bank.    V. That the said A. S. & W. A.
Brown, as copartners, being thus indebted to the said the
Bank of Sumter and heavily indebted to other creditors of
the said firm on the 26th day of March, 1895, and being de-
sirous of securing said bank with their property above
referred to, and on conditions hereinafter stated, executed a
conveyance to the said the Bank of Sumter of the following
described lands: 1. Those two parcels of land known as
DuBose land, &c.    2. All that tract of land of the individual
property of W. Alston Brown, known as "Rocky Pine"
place, &c.    3. All that tract of land known as the "Provi-
dence Place" of Albertus S. Brown, &c.    4. All the right,
title and interest which Albertus S. Brown has in and to all
of that lot or parcel of land in the city of Sumter, containing
forty-five acres, &c.    The consideration mentioned in the
deed was $10,000, but said land was conveyed and held as
security for the whole indebtedness of the said A. S. & W.
A. Brown to the said the Bank of Sumter, and by the express
terms of the said conveyance the said mortgages above re-
ferred to were not satisfied, but were left open to protect
the grantee and its successors and assigns against all incum-
brances and dower.    VI. That on the same day, to wit: on
the 26th day of March, 1895, the defendant, the Bank of
Sumter, executed a written agreement under the seal of the
corporation, through W. F. B. Haynsworth, its president,
and through W. F. Rhame, its cashier, and by authority of
the same as follows, to wit: On the 26th day of March,
1895, the same as the date hereof, Albertus S. Brown and
W. Alston Brown conveyed to the Bank of Sumter the fol-
lowing parcels of land, viz: 1. Those two parcels of land,
each containing 136 1-2 acres, making one entire tract

known as the "DuBose Land," the same having been owned by the grantors together.  2. A tract known as the "Rocky Pine" place, the individual property of W. A. Brown, containing 520 acres, more or less.  3. A tract of land known as the "Providence Place" of Albertus S. Brown, containing 1,075 acres, more or less.  4. All the right, title and interest of Albertus S. Brown in forty-five acres of land in the city of Sumter, S. C. * * * At the same time as aforesaid, the said Albertus S. Brown delivered and indorsed to the Bank of Sumter $2,000 of a note made to him by Brown, Cuttino & Delgar, dated January 18, 1895, for $2,500, due January 1st, 1896, with interest at seven per cent.  And the said Albertus S. Brown and W. Alston Brown, as copartners as A. S. & W. A. Brown, are largely indebted unto the Bank of Sumter, and they are contemplating making a deed of assignment for the benefit of their creditors, and the said Albertus S. Brown holds a rent obligation for the year 1895 against Scarborough & Raffield, payable in cotton, fifteen bales of which has been assigned to the Bank of Sumter, as well as all the rent for 1895 on the "DuBose Land" and "Rocky Pine" place.  Now, it is agreed by the Bank of Sumter as follows, in consideration of all the matters aforesaid, viz: 1. That the sum of $10,000 is to be entered as a credit as of this date upon the indebtedness of said A. S. & W. A. Brown to the Bank of Sumter for the lands so conveyed as of this date.  2. That the proceeds of the said fifteen bales of cotton and the rents from the said two places shall when realized be entered as a credit upon said indebtedness of A. S. & W. A. Brown to said Bank of Sumter.  3. That when the said $2,000 and interest is paid on the note of Brown, Cuttino & Delgar, the same shall be entered as a credit upon the said indebtedness of A. S. & W. A. Brown to the said bank, and when it is paid, the Bank of Sumter is to release, satisfy and discharge a mortgage made by the said Albertus S. Brown and W. Alston Brown to W. F. B. Haynsworth, dated the 8th day of December, 1893, and now held by the Bank of Sumter; the said mortgage covering the

store and lot of land at the corner of Main and Liberty streets, in the city of Sumter, S. C., now occupied by Brown, Cuttino & Delgar. 4. That the Bank of Sumter is to participate in the assignment to be made by A. S. & W. A. Brown, to the amount of $2,000, of its claims against them, and apply any dividends to be received to the credit of their indebtedness to the bank, after deducting all costs and expenses. 5. That the said Albertus S. Brown and W. Alston Brown, or either of them, and the heirs, executors or administrators of either of them, may at any time, as long as the same may be owned by the Bank of Sumter, purchase all the real estate so conveyed as aforesaid from the bank, at a sum equal to their present indebtedness to the bank (before any of said credits hereinbefore mentioned were applied), with interest, and taxes and all costs and expenses added, the bank to allow credit for everything received in the meantime; and as long as the same is owned by the bank, it will convey any of said property to the said Albertus S. Brown or W. Alston Brown, the heirs, executors or administrators of either of them, at the following sums respectively, adding interest as if said credits had not been made, taxes, costs and expenses, and giving credit for rents and profits received and payments made, if any, viz: the "Providence Place" at $8,000; the "DuBose lands" at $1,500, and the "Rocky Pine" place at $2,000, and the interest of Albertus S. Brown in the lots of land in the city of Sumter at $1,000. That should none of said lands be so purchased, the Bank of Sumter, in any event, agrees to pay to the said Albertus S. Brown, or his heirs, executors or administrators, as to the land conveyed by him; and to W. Alston Brown, his heirs, executors or administrators, as to the land conveyed by him; and to Albertus S. Brown and W. Alston Brown, their heirs, executors or administrators, as to the land conveyed by them, any sum or sums of money that it may realize from a sale or sales of said land in excess of their indebtedness to the bank, as aforesaid, giving credit for rents and profits and income, and price or prices realized from lands, and deducting their

indebtedness, interest, taxes, and all expenses. The interest referred to in this agreement, which the Bank of Sumter is to be entitled, is to be on the indebtedness above specified and detailed, as if the said credits had not been made, calculated with quarterly or quarter yearly rests, at the rate of eight per centum per annum on the principal and interest when due, said expenses to include attorneys' fees paid by or charged to the Bank of Sumter, aforesaid. In witness whereof the Bank of Sumter has by its president and cashier, and under its seal, signed, sealed and delivered this agreement. (Signed) the Bank of Sumter, per W. F. B. Haynsworth, president; and per W. F. Rhame, cashier. [L. S.] Signed, sealed and delivered in presence of (the words "as if said credit had not been made," and the words and figures at $1,500 and at $2,000 first interlined, and the words and figures each at "$1,500" quarterly first interlined) G. D. Ricker. VII. That the said conveyance and agreement, executed on the 26th day of March, 1895, constitute a mortgage to secure the indebtedness of the plaintiffs to the defendants, the Bank of Sumter; and if the Court shall hold that a power of sale is conferred on the mortgagee by said instruments, these plaintiffs allege that the amount of the debt has not been established by a Court of competent jurisdiction, nor has the amount of the debt been consented to in writing by the debtor subsequent to the maturity of the debt. VIII. That the said $2,000 of the note of Brown, Cuttino & Delgar, referred to in said agreement, has been paid to the said Bank of Sumter, and the mortgage to W. F. B. Haynsworth given up. IX. That the said A. S. & W. A. Brown exeucted a deed of assignment on the 28th day of March, 1895, in which Moultrie R. Wilson was appointed assignee, and I. C. Strauss was made agent of creditors, and the said the Bank of Sumter duly executed and filed an acceptance of its terms and a release of $2,000 of their debts, and said acceptance and release extinguished $2,000 of said indebtedness, and the same is no longer a charge upon the mortgaged premises or against these plaintiffs. X. That

the defendant, the Bank of Sumter, received as rent on said
lands for the year 1895 the sum of $1,132, and as rent on
said land for the year 1896 the sum of $1,180, as plaintiffs
are informed and believe.    XI. They allege on information
and belief that on the 5th day of November, 1896, the Bank
of Sumter conveyed to its codefendant, Marion Moise, the
four parcels of land above described by a deed, in which the
consideration was alleged to be $12,000.    That for some
time previous to the said last mentioned conveyance, negoti-
ations had been going on with H. T. Edens for a sale of the
"Providence Place" at and for a consideration of $10,000;
that the defendant, Marion Moise, had notice of the terms
and conditions on which the said the Bank of Sumter held
title to said land; that on the 10th day of November, 1896,
the said Marion Moise conveyed said "Providence Place" to
the said H. T. Edens for the sum of $10,000, and the said
Marion Moise still holds the other three parcels of land,
claiming them as his own. · XII. These plaintiffs allege
that the sums of money paid to the said the Bank of Sumter
and Marion Moise, has paid all the said indebtedness of the
said A. S. & W. A. Brown to the said Bank of Sumter, and
said debt, secured by the said mortgage, is paid in full and
said mortgage is satisfied.    But if any amount is found due
thereon, these plaintiffs are ready to pay the same.    Where-
fore the plaintiffs demand judgment.    1. That said convey-
ance and agreement may be adjudged a mortgage.    2. That
the defendant, the Bank of Sumter, may establish its mort-
gage debt and account for the rents and profits of said seve-
ral parcels of land.    3. That if said mortgage debt has been
paid, this Court shall order that the said Marion Moise shall
reconvey to the plaintiffs, according to their respective
rights, the several parcels of land held by him; and if any
portion of the mortgage debt remains unpaid, that these
plaintiffs may be allowed to pay the same, or in default
thereof that the same shall be sold by the master and the pro-
ceeds applied to the mortgage debt, and any portion not thus
sold be conveyed to the plaintiffs.    4. If the Court shall

hold that the conveyance made to the defendant, Marion Moise, is a valid conveyance, then that the said the Bank of Sumter shall account for and pay over to the plaintiffs any amount it may be found to have received over the mortgage debt. 5. That the plaintiffs may have such other and further relief as to the Court may seem just, and for their costs.

Defendants filed the following answers:

The defendant, the Bank of Sumter, answering the complaint herein, admits the allegations to be true which are contained in the paragraphs of the complaint designated I., II., III., VI., VIII., and all of paragraph IV., except the allegation therein contained that the plaintiffs were indebted to the Bank of Sumter at the time alleged only in the sum of $13,500. This defendant, on information received from its cashier and belief, alleges that at that time the indebtedness of the plaintiffs to this defendant amounted to the sum of $14,500, and was secured by the mortgages referred to in said paragraph IV. This defendant admits the allegations in paragraph V., except the allegation therein that the land therein referred to "was conveyed and held as security for the whole indebtedness of the said A. S. & W. A. Brown to the said the Bank of Sumter," which allegation this defendant denies, and alleges to the contrary thereof that the said conveyance was not intended or accepted by this defendant as or to be a security for said indebtedness; but was regarded and accepted by this defendant as a *bona fide* sale and conveyance to this defendant of said lands in fee simple absolute. This defendant admits the truth of the allegations in paragraph VII. of the complaint, except the allegations therein, "that the said conveyance and agreement, executed on the 26th day of March, 1895, constituted a mortgage to secure the indebtedness of the plaintiffs to the defendant, the Bank of Sumter," which allegation this defendant denies. This defendant admits that, as stated in paragraph IX. of the complaint, the said A. S. & W. A. Brown executed a deed of

assignment; and that in compliance. with a clause of the
agreement set out in the complaint in paragraph VI., this
defendant participated in the assignment by presenting a
claim for $2,000 against the assigned estate. But this de-
fendant alleges that by the express terms of said agreement
only the dividends to be received therefrom were to be ap-
plied to the credit of the indebtedness of the plaintiffs to this
defendant, after deducting all costs and expenses, and this
defendant denies that $2,000 of said indebtedness was
thereby extinguished, and denies that the said $2,000 is, as
alleged in paragraph IX., no longer a charge upon the mort-
gaged premises against the plaintiffs. This defendant
alleges, upon information and belief, that only about the sum
of $136.66 has been received by this defendant as dividends
from the said assigned estate. This defendant denies, on
information and belief, that the sum of money alleged in
paragraph X. of the complaint to have been received by this
defendant for rents of said lands, were received. This de-
fendant, on information and belief (having been so in-
formed by its cashier), alleges that the rents received for
said lands were smaller than the sums stated in said
paragraph X. This defendant, on information and belief
(having been so informed by its cashier), denies that the
amount of the proceeds of the sale by this defendant of the
said lands and of the rents and dividends received by this
defendant, and of the $2,000 on the note of Brown, Cuttino
& Delgar, referred to in complaint, did altogether equal the
amount of the indebtedness of the plaintiffs to this defend-
ant.

The defendant, Marion Moise, by his answer, which is
hereby amended as of course, answering the complaint
herein:

I. Denies each and every allegation of the same, except
such as may be hereinafter admitted. II. The said defend-
ant, further answering said complaint, admits the allegations
contained in paragraphs numbered I., II., III., VI., VIII.,

and all of paragraph IV., except the allegation therein contained to the effect that the plaintiffs were only indebted to the Bank of Sumter at the time alleged in the sum of $13,500; this defendant alleges, on information and belief, that the said plaintiffs were indebted to the said bank at that time in the sum of $14,500; and this defendant admits all of paragraph V., except the allegation therein contained to the effect that the conveyance referred to was taken and held by the bank as security for the whole indebtedness of the plaintiffs to the bank, which statement this defendant alleges to be untrue; and this defendant admits all of paragraph XI., except so much of the allegations therein contained as alleges that for some time previous to the execution of the conveyance by the plaintiffs to the bank, negotiations had been pending with one H. T. Edens for a sale of the Providence place; this defendant admits all of paragraph numbered VII., except the allegation to the effect that the conveyance and agreement therein referred to constituted a mortgage; and this defendant, answering paragraph IX. of said complaint, admits that the plaintiffs executed a deed of assignment as therein alleged, but he alleges that the bank has only received a dividend, as he is informed and believes, of about eight and one-third per cent., amounting to about $166.66; and he denies that the balance of the amount proven against said assigned estate has been extinguished; but on the contrary he alleges that the balance of said debt is a valid and subsisting obligation due to the bank by the plaintiffs, and that the plaintiffs are not entitled to a credit of $2,000 as alleged; this defendant admits that the consideration expressed in his deed to H. T. Edens is $10,000, but he alleges that the true consideration of said deed was an exchange of the Providence place for a tract of land in Marlboro County, and that the consideration actually received was considerably less than that expressed in said deed.    III. This defendant alleges that the conveyance by the plaintiffs to the Bank of Sumter, referred to in paragraph V. of the complaint, represents a *bona fide* sale and conveyance of all

the premises described therein in fee simple absolute to the bank; that at the time of said conveyance the said bank held *bona fide* mortgages executed by the plaintiffs to the bank, covering all of the lands described in said conveyance, and in addition thereto one of the mortgages executed by the plaintiffs to W. F. B. Haynsworth for, the benefit of the bank, covering the store house and lot in the city of Sumter then occupied by Brown, Cuttino & Delgar. This defendant alleges that it was expressly agreed that said city lot should not be sold and conveyed to the bank, but that the bank should release and satisfy its mortgage aforesaid upon said lot of land upon the payment to it of the sum of $2,000 and interest from the day of the date of said conveyance; that the negotiations and sale by the plaintiffs to the bank were conducted with this defendant, and it was not intimated nor contemplated by either of the said parties that the bank was taking a security for a debt, but, on the contrary, it was expressly understood that the bank was making a *bona fide* purchase, and to that end the liens of the various mortgages covering the lands described in said deed were left open to perfect the title against dower and all other encumbrances, and thereby make said conveyance effectual. IV. This defendant alleges that in the fall of 1895, the said bank received an offer of purchase for the Providence place, and as a courtesy to the plaintiff, A. S. Brown, notified him of the intended sale; whereupon he asked an option on the place, which the bank granted, and subsequently lost the sale by reason of the urgent request of the said A. S. Brown to the bank to hold the property until he, A. S. Brown, could realize the money with which to make the purchase; that in the spring of 1896, the plaintiff, A. S. Brown, made an offer of purchase to the bank of $1,000 for the interest he had conveyed the bank in a lot of land in the northwest section of the city covered by the deed aforesaid, but the bank declined to make the sale because the said A. S. Brown offered ten shares of the capital stock of said bank in payment instead of the money, which the bank did not think proper to accept,

as it was not buying up its own stock; that on the 13th day
of August, 1897, the plaintiff W. A. Brown, requested this
defendant to sell him a portion of the "Rocky Pine Place,"
but the offer was declined because the defendant was unwill-
ing to sell the part wanted, for the reason that the sale of
that portion of the premises would have rendered the bal-
ance of the tract unremunerative. V. This defendant
alleges that his principal reason for purchasing the real es-
tate from the bank was to rid it of that class of property,
which the bank did not want, could not manage and could
not make yield eight per cent. net income without making
large expenditures in ditching and draining the land and
erecting tenant houses. That all of the tenants on the
Rocky Pine and DuBose tracts had notified the bank that
they could not continue to rent the premises unless new
houses were erected, as all of the old ones were in a dilapi-
dated condition. This defendant alleges that the city lot
was at the time of the purchase by the bank and still con-
tinues to be unimproved and unremunerative. This de-
fendant further alleges that in 1895 the tenants upon the
Providence place notified the bank that it would be necessary
to expend a large sum of money to ditch and drain the plan-
tation, as it was then unhealthy by reason of the lack of pro-
per drainage, which was causing much sickness at the time.
VI. This defendant alleges that he purchased the property
referred to, believing at the time that he was receiving a
good title in fee simple; that he has expended considerable
sums of money in ditching and draining the lands and build-
ing tenant houses upon the DuBose and Rocky Pine places,
believing that his title thereto was good in fee, and that he
is entitled to be fully reimbursed for such expenditures in
case the Court should hold that the bank is liable to an ac-
counting to the plaintiffs. This defendant further alleges
that he has seen and talked with the plaintiffs frequently
since he purchased said property, and that neither of them
either said or intimated in any way that his title was not
good in fee simple to the premises, but, on the contrary, they

stood by and saw this defendant erect improvements upon said property, and have made offers of purchase of the property aforesaid.

After argument upon demurrers interposed by plaintiffs to defendants' answers, the Circuit Judge made the following order:

Upon hearing the complaint in this action, and the answers of the defendants and the demurrers of the plaintiffs to said answers, and upon arguments of counsel, it is ordered, upon motion of Haynsworth & Haynsworth and Lee & Moise, defendant's attorneys, that said demurrer be and the same is hereby ordered overruled, amongst other reasons, because it appears from the pleadings that the deed of 26th March, 1895, was not a mortgage, but an absolute conveyance, fairly, intelligently and voluntarily made by the plaintiffs themselves for a consideration fixed by themselves, and it was a transaction disconnected with the mortgage contract.

From this order plaintiffs appeal on the following exceptions:

I. Because his Honor erred in holding that "it appeared from the pleadings that the deed of 26th March, 1895 was not a mortgage but was an absolute deed," in that *a*. When said answers admitted that the relation of mortgagor and mortgagee originally existed between the parties and alleged no new consideration, it admitted that the new deed is a mortgage. *b*. When said answers admitted the provisions of the deed of 26th March, 1895, keeping alive the mortgages previously executed, they thereby admitted that said deed was a mortgage. II. Because his Honor erred in not construing the agreement of 26th March, 1895, in connection with the deed of 26th March, 1895, and in construing the two as one, in not holding that said deed and agreement constituted a mortgage. III. Because his Honor erred in not holding that when the answer of the bank admitted that

said bank accepted the terms of the deed of assignment executed by A. S. & W. A. Brown, filed its release and accepted its *pro rata,* it thereby admitted that $2,000 of its debt was extinguished.    IV.  Because his Honor erred in not holding that when the answer of the defendant, Marion Moise, admitted that he was vice-president and director of the corporation, the Bank of Sumter, and had knowledge of all the facts connected with the deed and agreement, it thereby admitted that said defendant could hold no title against said bank or the Browns.    V.  Because his Honor erred in not sustaining the demurrer of the plaintiffs to the counter-claim of the defendant, Marion Moise, for betterments, in that:  *a.* Said counter-claim does not state the value of said improvements, as required by the statute.    *b.*  Because the said answer does not allege that the owners of said land neglected to fulfill on their part the contract under which the defendant entered upon said lands.    VI.  Because his Honor erred in holding "it appears from the *pleadings* that the deed of 26th March, 1895, was not a mortgage, but an absolute conveyance, fairly, intelligently and voluntarily made by the plaintiffs themselves for a consideration fixed by themselves, and it was a transaction disconnected with the mortgage contract," in that there was no allegation in any of the pleadings to support said finding, and no evidence at all before the Court.

*Messrs. T. B. Fraser, Jr.,* and *T. B. Fraser,* of counsel for appellant, cite:  *The dealings originated in mortgages, and there was no new consideration:* 21 S. C., 400; 28 S. C., 371; 41 S. C., 167; 31 S. C., 281; 50 S. C., 178; 12 How. (U. S.), 139; 34 S. C., 80; McM. Eq., 3.  *A director and vice-president of the bank cannot hold the title as against the bank and its creditors:* 41 S. C., 167; 18 S. E. R., 669; 16 S. C., 589; 4 Rich. Eq., 167; 1 S. C., 184; 7 S. C., 200. *The effect of the acceptance of the assignment and the receipt of its pro rata is to discharge $2,000 of the firm debt:* 43 S. C., 10; 45 S. C., 610; 38 S. C., 428; 12 Pet., *199;

24 S. C., 497. *Mortgagee taking absolute conveyance of mortgaged lands assumes burden of proof that conveyance was intended as absolute sale:* 41 S. C., 166; 45 S. C., 41; 21 S. C., 400. *In like cases extrinsic parol evidence is admissable to show the real situation of the parties:* 21 S. C., 392; 46 S. C., 229, 411. "*Dispose of" includes transfer by mortgage:* 99 U. S., 61. *When answer does not show counter-claim or defense, it is demurrable:* 29 S. C., 286; 32 S. C., 243; 30 S. C., 111, 167.

*Messrs. Haynsworth & Haynsworth,* for the Bank of Sumter, contra, cite: *As to conveyance by mortgagor to mortgagee:* 41 S. C., 163; 21 S. C., 400; 24 S. C., 1; 14 S. C., 152. *As to the provision in the deed that the mortgages should remain open to protect against all encumbrances and dower:* 24 S. C., 18.

*Mr. R. D. Lee,* for Marion Moise, contra, cites: *No appeal from Judge's reasons:* 24 S. C., 478; 16 S. C., 619. *Answers were not demurrable:* Code, 170, 174. *The intention of the parties must be gathered from the writings and surrounding circumstances:* 16 S. C., 357; 1 Mass., 297; 8 Rich., 35; 13 S. C., 332; 31 S. C., 276; 41 S. C., 168; 28 S. C., 364; 11 Rich. Eq., 582; 22 Mich., 377; 1 R. & M., 506; 2 Ball & Beatt, 278; 4 Munf., 140; 2 Caines (N. Y.), 124. *If the debt was extinguished by a fair agreement, and the grantor given privilege of refunding, it is conditional sale:* 6 Paige, N. Y., 480; 8 Ib., 243; 2 Barb., 28. *Grantor who neglects to perform conditions will not be relieved:* 19 Ia., 335; 47 Barb., 220; 56 Ib., 97; 2 Laus., N. Y., 249; 7 Cranch, 218. *As to evidence necessary to show deed was intended as mortgage:* 41 Cal., 22; 80 Ill., 188; 10 Cal., 197; 7 Ia., 114. *Rights of parties to such sales:* 33 Vt., 125; 2 Cranch, 218; 14 Pick., 467; 16 N. J. Eq., 189; 2 Edw., N. Y. Ch., 143. *Agreement in deed to sell to grantor does not make it a mortgage:* 19 Wend., 518; 7 Conn., 143; 26 Mass., 184. *Presumption is that deed is what it pur-*

5—55

*ports to be:* 52 S. C., 55; 41 S. C., 169. *Purchase of mortgage premises by mortgagee extinguishes the debt:* 20 S. C., 558; 17 S. C., 503; 26 S. C., 401. *Covenant in the deed intended to leave open mortgages only to protect title of grantee:* 24 S. C., 18. *Instances where declarations by grantor that he "owned" no lands, or that he had "sold" his lands, held to evidence a sale and not a mortgage:* 45 S. C., 614; 50 S. C., 169; 52 S. C., 54.

April 22, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was originally commenced by Albertus S. Brown and W. Alston Brown, as individuals, and as copartners under the firm name of A. S. & W. A. Brown, as plaintiffs, against the above named defendants, on the 22d of November, 1897. Owing to the death of A. S. Brown, one of said plaintiffs, shortly after the answers were filed, an order was granted substituting the persons named in the title of this opinion, as plaintiffs, other than W. A. Brown, in the place of A. S. Brown, deceased, and continuing the action under said title. The defendants answered separately, and the plaintiffs demurred to both answers upon grounds which were reduced to. writing and are set forth in the "Case." The questions presented by the demurrers came before his Honor, Judge Watts, who, after argument, granted an order overruling the demurrers. From this order plaintiffs appeal upon the several exceptions set out in the record. Inasmuch as the primal and controlling question raised by this appeal is whether the facts stated in the answers are sufficient to constitute a defense to the action, all the pleadings should be reported, together with the order of the Circuit Judge and the exceptions. It is stated in the "Case" that: "At the conclusion of the argument, the presiding Judge announced, orally, his decision that the demurrers should be overruled, and further stated that, in his judgment, the transactions mentioned. in the pleadings were never intended and did not constitute

a mortgage, but that the same were intended and did consti-
tute an absolute sale in fee simple by the Browns to the bank,
the grantors by the terms of the accompanying written
agreement simply reserving the right to repurchase said
lands at certain fixed prices, at any time whilst the bank re-
mained the owner of the same.    Upon the order being
handed up for his signature, the presiding Judge stated that
he would strike out all of the same after the word 'overruled'
—because, whilst the remaining words therein expressed his
judgment, yet he was not sure that said words properly be-
longed to an order of the kind; but that if there was no ob-
jection, he would allow them to remain in the order.    To
this counsel for the plaintiffs replied that, whilst he was not
to be regarded as, in any sense, consenting, yet he had no
objection to said words remaining in the order beyond his
general objection to the order as a whole; and thereupon his
Honor signed the order as prepared."    It seems that the
deed in question was executed by A. S. Brown, through his
attorney in fact under a power of attorney, a copy of which
is set out in the "Case," which, as part and parcel of the
deed, was before the Circuit Judge when he heard the case
on demurrer.    It also appears that, during the argument;
counsel for defendants moved the Court, in case the demur-
rers were sustained, to allow them to amend their answers
by alleging certain additional facts, not set forth in their
answers, which additional facts are stated, substantially, in
the "Case." .  By agreement, the following was added to
the "Case:" "The appellants contend that the action should
be determined upon the pleadings, the construction of the
deed, the power of attorney, and the written agreement ac-
companying the deed; and that all parol testimony is irrele-
vant.    But if the Court deems the statements therein made
to be relevant, then we agree that the same may be consid-
ered by the Court in its decision herein, with a view of
allowing the defendants to amend by setting them up in
their answers."    Exactly what this means we do not know
that we fully comprehend; but in the view which we take,

that is immaterial.    As we understand it, the Circuit Judge heard the case, in the only way in which he could properly have heard it, when presented by demurrer—that is, upon the pleadings, including the deed therein mentioned, with the accompanying power of attorney, under which the deed was executed by one of the grantors, and not including the additional facts which defendants desire to insert in their answers—which facts were not properly before the Circuit Judge, and could not, and, so far as appears, were not, considered by him; for he expressly declares in his order that his judgment was based upon what appears in the pleadings. The only question before the Circuit Judge was whether the facts stated in the answers were sufficient to consitute a defense, and that question could only be determined by an examination of the pleadings; and the only question before this Court is whether there was any error in the conclusion reached by the Circuit Judge; and this Court, being an appellate tribunal, has no power to go outside of the case as made in the Court below.    We must, therefore, decline the request of counsel to consider the additional facts above referred to, and confine our attention to the case as made before the Circuit Judge when he rendered the judgment appealed from, without regard to the additional facts mentioned in the "Case," which counsel for defendants stated they were then ready to prove—*not,* however, because we consider that parol evidence was either incompetent or irrelevant in a case like this, but simply because this Court being an appellate tribunal, is limited to a review of what occurred in the Court below.    In the case of *Bermingham* v. *Forsythe,* 26 S. C., at page 363, grave doubts were expressed as to the power of this Court to consider any fact, even though admitted by counsel, which was not before the Court below when the judgment appealed from was rendered; and although the point was not then decided, inasmuch as it was not necessary to do so in that case, yet subsequent reflection and examination has only served to increase the doubt there expressed; and we are

now satisfied that this Court, if it should undertake to con-
sider any facts not properly before the Circuit Court, would
be assuming *original* jurisdiction, at least so far as such
facts are concerned, which, under the Constitution, this
Court has no power to exercise, except in certain specified
classes of cases, of which the present case is not one.   The
question here presented arises on a demurrer, and in the de-
termination of such a question neither this Court nor the
Circuit Court can·consider any fact not appearing in the
pleadings.   If, however, the judgment overruling the de-
murrers is sustained—as it will be presently seen it must be
—then the defendants may, if so advised, amend their
answers by inserting the additional facts which they claim
will show that the deed in question was not intended to be
a mortgage, but is, in fact, what it appears to be on its face,
an absolute conveyance.   For when the demurrers are over-
ruled, the plaintiffs will still be at liberty to have the issues
presented by the pleadings tried upon their merits.

We will now proceed to the consideration of what we re-
gard as the controlling question in this case, waiving, for the
purposes of this inquiry, what may be termed the formal
objections to the demurrers.   The real question is whether
the facts stated in the answers are sufficient to constitute a
defense to the action.   The main object of the action
is to have the deed mentioned in the complaint,
which appears on its face to be an absolute convey-
ance, declared to be a mortgage; and the question is nar-
rowed down to the inquiry whether the facts stated in the
answers are sufficient to show that such deed is, in fact, what
it purports to be on its face, an absolute conveyance, and
also whether the denials in the answers of certain allegations
in the complaint are sufficient to raise the issue as to whether
such deed was intended to be, and is, in fact, a mere security
for the payment of a debt.   For while it is undoubtedly true
that a deed, which appears on its face to be an absolute con-
veyance, may, in equity, be declared to be a mortgage, if the
evidence be sufficient to show that such was the intention of

the parties; yet it is equally true that the presumption is that the deed is what, on its face, it purports to be, an absolute conveyance, and to establish its character as a mortgage, the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail. 3 Pom. Eq. Jur., sec. 1196; *Arnold* v. *Mathison,* Rich. Eq., 153; *Petty* v. *Petty,* 52 S. C., 54. Whether any particular transaction amounts to a mortgage or to an absolute sale, with an agreement allowing the vendor· to repurchase the lands at a special price and within a time limited, "must to a large extent depend upon its own special circumstances; for the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings, or as disclosed by the extrinsic evidence." 3 Pom. Eq., sec. 1195. It appears from the pleadings that the Browns were indebted to the Bank of Sumter in a large sum of money—$13,500, as alleged in the complaint—$14,500, as alleged in the answers—which indebtedness was secured by several mortgages on real estate, one on the "Providence Place," one on the "DuBose land," one on the "Rocky Pine" place, one on the interest of A. S. Brown on certain lots in the city of Sumter,· and another mortgage on a lot at the corner of Main and Liberty streets, in the city of Sumter, occupied by Brown, Cuttino & Delgar. When these several mortgages were executed, or when the debts which they were given to secure arose, does not appear. On the 26th day of March, 1895, the Browns executed a deed, absolute in form, to the Bank of Sumter for all the real estate covered by the said mortgages, except the city lot occupied by Brown, Cuttino & Delgar. The consideration stated in said deed was the sum of $10,000, and the deed contained a provision that said mortgages were to be "left open to protect the grantee and its successors and assigns against all incumbrances and dower." This deed was executed by A. S. Brown through an attorney in fact under a power of attorney attached to the deed, the terms of which will hereinafter be referred to. On the same day, to wit:

the 26th of March, 1895, the Bank of Sumter executed an agreement, in writing, the terms of which are fully set forth in the complaint and admitted in the answers. It seems that the Bank of Sumter immediately went into possession of the lands conveyed to it, and on the 5th of November, 1896, sold and conveyed the same to its codefendant, Marion Moise, Esq., the consideration mentioned in the deed being the sum of $12,000, and that said Moise shortly afterwards sold and conveyed the "Providence Place" to H. T. Edens, the consideration mentioned in the deed being the sum of $10,000, though Mr. Moise, in his answer, alleges that the true consideration of said deed was an exchange of the "Providence Place" for a tract of land in Marlboro County, and that the consideration actually received was considerably less than that expressed in the deed.

The plaintiffs in their complaint allege that the true object and real intent of the deed to the Bank of Sumter was to secure the indebtedness of the Browns to said bank and not to convey the land therein mentioned absolutely, and such conveyance really constitutes a mortgage. This allegation is distinctly denied in both answers, and on the contrary it is there alleged that the real object and true intent of said deed was just what it purports on its face to be, an absolute conveyance; and Mr. Moise in his answer alleges specifically "that at the time of the said conveyance the said bank held *bona fide* mortgages executed by the plaintiffs (meaning the Browns) to the bank covering all of the lands described in said conveyance, and in addition thereto one of the mortgages executed by the plaintiffs to W. F. B. Haynsworth for the benefit of the bank, covering the storehouse and lot in the city of Sumter, then occupied by Brown, Cuttino & Delgar. This defendant alleges that it was expressly agreed that said city lot should not be sold and conveyed to the bank, but that the bank should release and satisfy its mortgage aforesaid upon said lot of land upon the payment to it·of the sum of $2,000, and interest from the day of the date of said conveyances; that the negotia-

tions and sale by the plaintiffs to the bank were conducted with this defendant, and it was not intimated nor contemplated by either of the said parties that the bank was taking a security for a debt; but, on the contrary, it was expressly understood that the bank was making a *bona fide* purchase, and to that end the liens of the various mortgages covering the lands described in said deed were left open to perfect the title against dower, and all.other incumbrances, and thereby make said conveyance effectual." Now if, as said by Pomeroy in the passage quoted above, "the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings, or as disclosed by the extrinsic evidence," it would·seem to be clear that where, as in this case, it is alleged in the complaint that the deed in question, though absolute on its face, was really intended as a mere security for the payment of a debt, and that allegation is not only distinctly denied in the answer, but, on the contrary, it is positively averred that it was never even intimated that the deed was to be a mere security for the payment of a debt, but that it was expressly understood to be a *bona fide* purchase of the absolute title, a direct and material issue is raised by the pleadings, and the answer could not be regarded as amenable to a demurrer upon the ground that the facts therein stated are not sufficient to constitute a defense.

But in addition to this, when the pleadings show, as they do in this case (for it must be remembered that facts alleged in the complaint which are admitted by the answer become a part of the answer, and may be referred to in testing the sufficiency of such answer), that the bank already held mortgages not only upon all the property covered by the deed, but also upon an additional piece of property—the city lot occupied by Brown, Cuttino & Delgar—not conveyed by the deed, it seems impossible to conceive that the bank would take another mortgage upon only a portion of the property already covered by mortgages in favor of the bank; and yet the contention of plaintiffs rests upon that theory. But, as we understand it, the contention of appellants rests

not so much upon the omission of allegations in the answers to constitute a defense to the action, but the admission of certain facts alleged in the complaint, which, it is claimed, defeat the defense sought to be set up by the answers. In subdivision "a" of exception 1, the point is made that the answers having admitted the allegation in the complaint that the relation of mortgagor and mortgagee originally existed between the parties, and alleged no new consideration for the deed of 26th March, 1895, they thereby admitted that said deed was a mortgage. If that deed had been an agreement that the original mortgages should be converted into absolute conveyances, we can well understand how a new consideration would be necessary to the validity of such agreement. But where, as in this case, a creditor holding mortgages on several parcels of real estate to secure the payment of a debt, purchases the mortgaged premises, or rather a part thereof, at a price less than the amount of his debt and takes from his debtor an absolute conveyance, we are not prepared to admit that any new consideration is necessary to the validity of such conveyance; for it is well settled that where the mortgagee purchases the mortgaged premises, at a sale other than for foreclosure of the mortgage, the mortgage debt is thereby extinguished. *Devereux* v.*Taft,* 20 S. C., 555, and the cases therein cited; and the same principle applies *pro tanto* where only a portion of the mortgaged premises are purchased. *Trimmier* v. *Vise,* 17 S. C., 499. If, therefore, any *new* consideration, as it is called, be necessary, it would be found in the extinguishment of the mortgage debt, either in whole or in part, according to the fact, whether the purchase was in whole or only in part of the mortgaged premises. But even if an entirely new consideration was necessary to the validity of the deed in question, as an absolute conveyance, it can be found in the fact that the bank agreed to satisfy the mortgage on the city lot, occupied by Brown, Cuttino & Delgar (which is not a part of the premises conveyed) to secure a note for $2,500, upon the payment of $2,000 and interest, to

the bank; which agreement, it is alleged in the complaint and admitted in the answers, has been complied with.    It seems to us, therefore, that subdivision (a) of the first exception cannot be sustained.

In subdivision (b) of that exception the point is made that the admission in the answers that the deed contains a provision that the original mortgages were to be "left open to protect the grantee and its successors and assigns against all incumbrances and dower," amounts to an admission that said deed was intended to be a mortgage.    It seems to us that the insertion of this provision in the deed has precisely the contrary effect to that contended for by appellants.    For while it has a very appropriate place in an absolute conveyance from a mortgagor to a mortgagee of the mortgaged premises, and serves a very important purpose in such a conveyance, we do not think it has any place or serves any purpose in a new mortgage.    In an absolute conveyance, its function is to protect the grantee against the claim of dower by the wife of the mortgagor, or any incumbrance subsequent to the original mortgage, and has been made to serve that purpose in *Agnew* v. *Railroad Co.,* 24 S. C., 18, and that is its sole purpose here, as declared by the express terms of the provision.    It does not keep the original debt alive *as against the mortgagor,* for that, as we have seen, is extinguished by the conveyance.    On the contrary, its sole purpose and its only effect is to protect the grantee against subsequent incumbrances.    The test of this is that the grantee never could enforce his original debt against the mortgagor.    It seems to us, therefore, that the insertion of this provision in the deed under consideration, instead of showing that such deed was intended to be a mortgage, shows that it was intended to be just what it purports, on its face, to be, an absolute conveyance.

The second exception imputes error to the Circuit Judge in not construing the deed of the 26th of March, 1895, in connection with the agreement of the same date, fully set out in the complaint, and admitted in both answers, to constitute a

mortgage.　It seems to us that the provisions of that agreement show that the real object and true intent of the whole transaction was that the Browns should make an absolute conveyance of the lands described in the deed to the bank, and that they should be allowed the privilege of buying back the lands or parts thereof, as long as the bank continued to be the owner thereof, at certain specified prices.　'Take the terms of the 5th paragraph of the agreement, whereby the Browns, or either of them, are allowed the privilege, as long as the bank may continue to be the owner thereof, to "purchase all the real estate so conveyed as aforesaid from the bank at a sum equal to their present indebtedness to the bank (before any of said credits hereinbefore mentioned were applied), with interest, and taxes and all costs and expenses added, the bank to allow credit for everything received in the meantime; and as long as the same is owned by the bank, it will convey any of said property to the said Albertus S. Brown or W. Alston Brown, the heirs, executors or administrators of either of them, at the following sums respectively, adding interest as if said credits had not been made, taxes, costs and expenses, and giving credit for rents and profits received and payments made, if any, viz : the 'Providence Place' at $8,000; the 'DuBose lands' at $1,500, and the 'Rocky Pine' place at $2,000." Now observe the language used : The bank is spoken of as the *owner* of the property conveyed—the Browns are authorized to *purchase* the whole or any part of said property, *"as long as the same may be owned by the Bank of Sumter,"* which necessarily implies the right of the bank to sell or dispose of the property, at any time, and in any way, it might see fit. Then the provision that the Browns, or either of them, as long as the bank continued to be the owner, might repurchase either of the parcels conveyed at certain specified prices. Then again the provision in the first paragraph of the agreement : "That the sum of $10,000 is to be entered *as a credit as of this date* upon the indebtedness of" the said Browns to the bank—which is the amount mentioned as the consider-

ation of the deed. These provisions, couched in such language, show that the real object and true intent of the deed was that it should be an absolute conveyance, and not a security for a debt, for which the bank already held mortgages on all the land conveyed, as well as on another parcel not embraced in the conveyance. For if the intention had been merely to give the bank security for the amount due it by the Browns, very different language would have been employed. The bank did not obligate itself to *reconvey* the property upon the payment of the amount due within a specified time, or even within a reasonable time. On the contrary, by the express terms of the agreement, it was contemplated that the bank might, at any time it saw fit, sell or otherwise dispose of the property conveyed, just as an absolute owner could do; and the Browns were only allowed the privilege of buying back the property at certain specified prices, as long as the bank continued to be the owner. In addition to this, the allegation in the answer of Mr. Moise, who seems to have acted for the bank in this whole transaction, that W. A. Brown, the survivor of A. S. & W. A. Brown, on more than one occasion endeavored to buy from the bank portions of the property conveyed, upon terms other than those provided for in the agreement, serves to strengthen the conclusion that the intention of the parties, at the time of the transaction, was that the deed was an absolute conveyance, and was not intended to be a mere security for the payment of a debt.

Again, the terms of the power of attorney, attached to the deed, under which the same was executed by one of the grantors, tend to show that the intention was to execute an absolute conveyance, and not a mere mortgage. By that paper one of the original plaintiffs, S. Brown, appoints the other plaintiff, W. Alston Brown, his true and lawful attorney in fact, "To sell and dispose of any and all lands that I own, or have any interest in, in the State of South Carolina, and particularly in Sumter County, upon such terms as he may deem proper, and to sign, seal, make

and deliver good and sufficient deeds of conveyance for the same." This language, while very appropriate to create a power to sell and convey by absolute deeds, does not imply a power to mortgage. This power of attorney was executed a short time before the deed in question was executed, and, of course, both the donor and donee of the power knew that they were then largely indebted to the bank, which indebtedness was already secured by mortgages on their property; and if it was in the contemplation of the parties to give another mortgage, or a deed intended to operate as such, it is inconceivable that they should have omitted from the power of attorney any words indicating such an intent. But if their intention was to execute absolute conveyances, then the words used were just such as would express such an intention. Counsel for appellants rely upon the words "dispose of," as expressive of an intention to authorize the execution of a mortgage, and cites the case of *Platt* v. *Union Pacific R. R. Co.,* 99 U. S., 48. In that case, Congress, for the purpose of aiding in the construction of this trans-continental railroad, made a grant of lands to the company, and the act making such grant contained a provision that all such lands as were not "sold or disposed of" by the company before the expiration of three years after the completion of the entire road, should be subject to settlement and pre-emption like other public lands. The company executed a mortgage covering these lands, with a view to raise money to continue and complete the construction of their road, and the question was whether the mortgage of these lands was such a disposition thereof, as would relieve them from being subject to the right of pre-emption. It was held that the mortgage was such a disposition; but this conclusion was based upon the manifest object of the act of Congress, which was to aid the company in raising the funds necessary to construct their railroad, and cannot be regarded as authority in this case. Even in that case there was a strong dissent by three of the Justices. In 18 Am. & Eng. Ency. of Law, 871, it is said, in speaking of the construction of powers of attorneys: "The

obvious meaning of terms is not to be extended by implication in the absence of necessity." And again, at page 873, it is said: "Where authority to perform specific acts is given and general words are also employed, such words·are limited to the particular acts authorized." It seems to us that the terms used in this power of attorney—"to sell and dispose of" real estate, and to execute "good and sufficient deeds of conveyance for the same"—obviously mean to make absolute conveyance and cannot be extended by implication so as to confer a power to mortgage. Indeed, in the case of *Ivy* v. *Caston,* 21 S. C., 583, it was doubted whether even a mortgage of *personal* property, which does operate as a transfer of title, after condition broken, could be regarded as a *"disposition"* of property, within the meaning of the terms used in the attachment act; and certainly a mortgage of *real* property, which does *not* operate as a conveyance of title, cannot be regarded as a *"disposition"* of such real estate. Under the view which we have taken of the main question in the case, the points presented by the remaining exceptions do not properly arise and need not, therefore, be considered.

The judgment of this Court is, that the order of the Circuia Court, overruling the demurrers to the answers of defendants, be affirmed, and that the case be remanded to the Circuit Court for such other proceedings as may be necessary, with leave to the defendants, if they shall be so advised, to amend their answers as hereinabove indicated.