## 10881

### BROCKINGTON v. LYNCH

#### (112 S. E. 94)

1. MORTGAGES—PARTIES HAVE SAME CAPACITY TO TRANSFER MORTGAGED PROPERTY IN SATISFACTION OF DEBT BY EXECUTORY AGREEMENT AS THEY HAD BY IMMEDIATE TRANSFER.—The parties to a mortgage have the same capacity to consummate by an executory agreement a transfer of the property in satisfaction of the debt as they have to consummate by an immediate transfer. (Per Cothran, J.)

2. ESCROWS—REQUISITES STATED.—Every element of the valid escrow appears where there are sufficient parties, a proper subject-matter, a consideration, and the parties have contracted to place a deed in the hands of a third party to be delivered under the condition stated. (Per Cothran, J.)

3. ESCROWS—CANNOT BE REVOKED EXCEPT BY AGREEMENT.—An escrow deposited upon a valid consideration cannot be revoked by the depositor, except according to the agreement creating it. (Per Cothran, J.)

4. ESCROWS—DEPOSITARY HELD AGENT OF BOTH PARTIES.—Where a deed is placed in escrow, the depositary as respects delivery is as much the agent of the grantee as of the grantor. (Per Cothran, J.)

5. MORTGAGES—AGREEMENT TO PLACE ABSOLUTE DEED IN ESCROW TO BE DELIVERED TO MORTGAGEE UNLESS PAYMENT OF THE MORTGAGE DEBT MADE HELD VALID.—When a mortgage representing the full value of the land was past due, a contract to place in escrow a deed in fee to be delivered to the mortgagee in satisfaction of the debt unless payments were made at the times stated was valid. (Per Cothran, J.)

6. MORTGAGES—CONVEYANCE ACCEPTED IN PAYMENT OF DEBT ACCOMPANIED BY AGREEMENT TO RECOVER UPON PAYMENT OF STATED SUM HELD "CONDITIONAL SALE."—An absolute conveyance accepted in payment of an existing debt and not merely as security for it, accompanied by an agreement to reconvey upon payment of a stated sum within a specified time, constitutes a "condi-

18 S. C.—119

tional sale" and not a mortgage; the grantee holding the premises subject only to the right of the grantor to demand a reconveyance according to the engagement. (Per Cothran, J.)

7. MORTGAGES—AFTER MATURITY MORTGAGOR HAS POWER TO CONVEY IN FEE IN SATISFACTION OF DEBT.—Where there are no equitable circumstances after maturity of a mortgage, the mortgagor has the power to make an absolute conveyance to the mortgagee in satisfaction of the debt, especially in view of Civ. Code 1912, § 3460, recognizing the validity of a release of the equity of redemption. (Per Cothran, J.)

·8. MORTGAGES—RELEASE OF EQUITY OF REDEMPTION AFTER MATURITY SET ASIDE UNLESS MORTGAGOR FAIRLY DEALT WITH.—Even after maturity, transactions between mortgagors and mortgagees will be scrutinized and a release of the equity of redemption set aside unless mortgagor was fairly dealt with. (Per Cothran, J.)

9. MORTGAGES—EXTENSION OF TIME AND EXTINGUISHMENT OF DEBT HELD SUFFICIENT CONSIDERATION FOR RELEASING EQUITY OF REDEMPTION.—Where a past-due mortgage was practically equal to the value of the land, the extension of time and the satisfaction of the mortgage debt was a sufficint considration for an agreement to place in escrow an absolute deed to be delivered to the mortgagee in satisfaction of the debt, unless mortgagor made stated payments on specified dates. (Per Cothran, J.)

10. MORTGAGES—WHETHER MORTGAGE OR CONDITIONAL SALE FIXED AT INCEPTION.—Whether a transaction is a mortgage or a conditional sale is fixed at the time of its inception. (Per Cothran, J.)

11. MORTGAGES—EXTINGUISHMENT OF MORTGAGE. DEBT CONSIDERATION FOR CONDITIONAL SALE.—The fact that no new consideration other than the mortgage debt was given for an agreement to place an absolute deed in escrow, to be delivered to the mortgagee in satisfaction of the debt unless certain payments were made, did not make such agreement a mortgage rather than conditional sale. (Per Cothran, J.)

12. MORTGAGES—MAXIM, "ONCE A MORTGAGE, ALWAYS A MORTGAGE," APPLIES ONLY WHERE DEBTOR-CREDITOR RELATIONSHIP CONTINUES.— The maxim, "Once a mortgage, always a mortgage," applies only as long as the original debtor-creditor relationship continues, and not to an agreement whereby the creditor surrenders his rights as a creditor and the mortgagor his rights as the holder of the legal title. (Per Cothran, J.)

13. MORTGAGES—DISTINGUISHED FROM "CONDITIONAL SALES."—Where the grantee has a right, reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the

debt, the transaction is a mortgage, while, if the grantee has no right to compel payment, the transaction is a conditional sale. (Per Cothran, J.)

14. MORTGAGES—TRANSACTION HELD TO BE A CONDITIONAL SALE AND NOT A MORTGAGE.—Where, after maturity, the parties to a mortgage agreed to place an absolute deed in escrow to be delivered in satisfaction of the mortgage debt on next January 1st, unless the mortgagor paid $3,000.00 by that date, but if the mortgagor failed to make this payment, but paid the entire debt by the succeeding January 1st, mortgagee should reconvey the property, the agreement was a conditional sale, as mortgagor was under no personal obligation to pay the debt. (Per Cothran, J.)

15. MORTGAGES—RIGHT TO CLAIM REDEMPTION HELD ABANDONED.— Where, after maturity, pursuant to an agreement, the parties to a mortgage placed an absolute deed in escrow, which was later delivered to the original mortgagee in satisfaction of the mortgage debt, and the original mortgagor then leased and paid rent on the property for five years, he abandoned all claim to redemption even if the escrow agreement created a mortgagor-mortgagee relationship. (Per Cothran, J.)

16. JUDGMENT—DECREE MUST BE SUPPORTED BY ALLEGATIONS OF BILL— In an action to have an absolute deed declared to be a mortgage, plaintiff has no right to a decree upon a theory not supported by the pleadings. (Per Cothran, J.)

17. JUDGMENT—MUST BE SUPPORTED BY PLEADINGS.—A judgment which is not supported by the pleadings is fatally defective. (Per Cothran, J.)

18. JUDGMENT—NO RECOVERY ON CAUSE OF ACTION NOT PLEADED.— There can be no recovery upon a cause of action which is in substance variant from that which is pleaded by the plaintiff. (Per Cothran, J.)

19. ACTION—QUESTION OF FAIRNESS OF FORFEITURE OF FIRST PAYMENT IF SECOND PAYMENT NOT MADE IS MOOT AND NOT CONSIDERED WHERE NO PAYMENTS MADE.—Where, after a mortgage was past due, the parties agreed to place an absolute deed of the property in escrow to be delivered to the mortgagee and the debt extinguished unless the mortgagor paid $3,000.00 by the following January, in which case it was to be delivered unless the mortgagor paid the balance due by the following January, the agreement cannot be objected to as being inequitable because mortgagor would have lost the $3,000.00 if he had paid it and failed to make the second payment, where he made no payments. (Per Cothran, J.)

20. MORTGAGES—EQUITY OF REDEMPTION CANNOT BE CUT OFF BY CON-
    TEMPORANEOUS AGREEMENT.—A mortgagor may not, at the time
    he secures the loan on the land, cut off his right to redeem by
    any instrument executed at that time.  (Per Cothran, J.)

21. MORTGAGES—CONTRACT TO SECURE DEBT HELD MORTGAGE.—A con-
    tract, whatever may be its form if intended as a security for a
    debt, is in law a mortgage.     (Per Fraser and Watts, JJ.)

22. MORTGAGES—AFTER MATURITY, ABSOLUTE DEED PLACED IN ESCROW
    TO BE DELIVERED TO MORTGAGEE IN SATISFACTION ·OF DEBT UNLESS
    PAYMENT MADE HELD MORTGAGE.—Where, after maturity of a
    mortgage, pursuant to an agreement, the mortgagor placed an
    absolute deed to the premises in escrow to be delivered to the
    mortgagee in satisfaction of the debt unless the mortgagor made
    payments at stated times, the deed was security for the debt
    and therefore a mortgage.  (Per Fraser and Watts, JJ.)

23. MORTGAGES—MORTGAGOR AFTER LEASING PREMISES FOR FIVE YEARS
    ESTOPPED FROM CLAIMING REDEMPTION.—Where, after maturity
    of a mortgage, the mortgagor placed an absolute deed in escrow
    to be delivered to the mortgagee in satisfaction of a debt unless
    the mortgagor made stated payments, and on his failure to make
    these payments the deed was delivered and the mortgagor leased
    the premises from the mortgagee, remaining in possession and pay-
    ing rent as tenant for five years, he was estopped from denying
    the mortgagee's title and claiming a  redemption. (Per  Fraser
    and Watts, JJ.)

Before SHIPP, J., Florence, Summer term, 1920.    Re-
versed.

Action by B. Frank Brockington against J. Caleb Lynch.
Judgment for plaintiff and defendant appeals.

The agreement, report of Referee, decree of Circuit
Judge, and exceptions, referred to in the opinion, were as
follows:

## ESCROW AGREEMENT

"This agreement made and entered into, by and between
B. F. Brockington, hereinafter called the  grantor,  J.  C.
Lynch, hereinafter called the grantee, and Bank of Lake
City, a South Carolina banking corporation, hereinafter
called the escrow, witnesseth:

"Whereas, the grantor is the owner of a certain tract

of land, situate partly in the County of Florence and partly in the County of Sumter, in the State of South Carolina, containing three hundred and seventy-eight (378) acres, and bounded as follows, to-wit:  On the north and northeast by lands of the estate of Mrs. S. M. Dickson; on the west by lands of J. D. McNeill; on the southwest by lands of B. Truluck; on the south and southeast by lands of the estate of Ervin Dickson, same being the lands conveyed to grantor by G. G. Palmer as administrator of the last will and testament of Sarah M. Dickson, said deed bearing date January 2, 1901; and

"Whereas, the grantee is or is about to become the owner of certain mortgages thereover, aggregating the amount to wit, $14,196.32, which said mortgages are described and designated as follows, to wit, mortgage from grantor to Bank of Lake City, dated January 14, 1908, for $5,-434.78, and recorded in the office of the Clerk of Court of Common Pleas for Florence County, in Book X at page 274; mortgage from grantor to Bank of Lake City, dated February 29, 1912, for $1,212.10, and recorded in the office of the Clerk of Court of Common Pleas for Florence County in Book 5 at page 475; mortgage from grantor to grantee, dated April 28, 1913, for $6,256.17, and recorded in the office of the Clerk of Court of Common Pleas for Florence County in Book II, at page 365, on May 14, 1913; and

"Whereas, in order to save the grantee the costs and expenses of the foreclosure of said mortgages, in the event of default, or breach of the terms thereof, said grantor has this day duly made, executed and delivered unto the escrow his certain good and sufficient fee simple deed of conveyance for said premises to hold said deed in escrow to and for the uses and purposes thereinafter set forth:

"Now, therefore, and in consideration of the foregoing recitals and the things therein contained, be it remembered:

"That the grantor does hereby deliver to the escrow his deed for said above-described premises, which deed said escrow promises to hold and keep and to deliver to the grantee as and for the act and deed of the grantor, on the 1st day of January, A. D. 1915, unless, on or before said date the grantor shall place on deposit with the escrow the sum of three thousand ($3,000.00) dollars to the credit of the grantee (said sum to be applied towards the payment of said mortgage debt), and upon the grantor's so doing then said escrow will continue to hold and keep said deed until the 1st day of January, A. D. 1916, and upon said last mentioned date if the grantor has not before then paid to the grantee all sums due to him by reason of said mortgages including principal and interest, according to the terms thereof, and secured the proper receipts of said grantee therefor, then, shall said escrow deliver, as the act and deed of said grantor, said conveyance of said premises to said grantee, who shall thereupon be and become the sole and unconditional owner of said property, and shall be entitled to the immediate possession therefor, and the whole thereof.

"And the said grantee hereby promises and agrees that during the continuance of this agreement, to wit, until the first day of January, A. D. 1915; and if the said sum of $3,000.00 shall be paid on or before said date, as hereinbefore required, then, until the 1st day of January, A. D. 1916, that he shall not attempt a collection of said sum of any part thereof due to him by reason of said mortgages hereinbefore mentioned, nor shall he disturb said grantor in the possession of the said premises, but on said last mentioned date (if said sum of $3,000.00 be paid as above provided), and, if not, on the 1st day of January, A. D. 1915, then and in either event, will he accept said deed from said escrow with all the rights and privileges thereby conferred, in full settlement of any and all sums due to him by said grantor, by reason of said mortgages as prin-

cipal, interest or otherwise; provided, however, that at any time prior to said first day of January, A. D. 1916, said grantor may and the right is hereby given to him to pay to the grantee the amount due him by reason of said mortgages, in which event, and upon due proof thereof to the escrow, shall said deed be returned and re-delivered unto the grantor.

"And I, the said grantor, promise and agree upon default of the conditions hereinbefore named, and upon presentation of said above mentioned deed, to vacate and surrender the possession of said premises unto said grantee, who, thereupon, without suit or process, may enter and have exclusive possession thereunder.

"And I, A. H. Williams, as president of Bank of Lake City, a South Carolina banking corporation, and for said Bank, do hereby accept said deed in escrow and promise and agree for said Bank to hold and keep said deed in accordance with the terms and condition hereof, and for the uses and purposes herein set forth, to deliver or redeliver the same upon the performance or non-performance of the conditions hereinbefore set forth at length.

"And lastly, it is hereby mutually understood and agreed, by and between the parties hereto, that all the terms, stipulations and agreements herein contained shall be binding upon the parties hereto and each and every of his or its heirs, executors, administrators, successors and assigns, as the case may be."

Attestation clause omitted.

### Report of Special Referee

To the Honorable, the Court of Common Pleas:

This is a proceeding on the equity side of the Court, involving the question whether or not a certain instrument is a deed or a mortgage. The matter comes before me under an order of Court appointing me Special Referee to

take testimony and report my findings of fact and conclusions of law, which are hereinafter respectfully submitted, together with the record.

The facts are, in brief, as follows:

The plaintiff owed several debts, secured by mortgages, to various firms, banks, and individuals. It seems that, at the time of the commencement of this transaction between plaintiff and defendants, the defendant was one of a number of general creditors of plaintiff. The plaintiff was adjudged a bankrupt and effected a 20 per cent. composition, and in order to raise the funds to pay this composition he borrowed money from the defendant, the defendant, however, requiring from the plaintiff as a condition to making loan, that the plaintiff should pay him the full amount of his claim, which appears to have been a considerable sum. At that time there were already two mortgages on the land, which fact was known to the defendant and which the defendant subsequently took up, at which time the escrow agreement was entered into, and all of which, taken together, aggregated the sum of $14,196.32, as mentioned in the agreement. So plaintiff executes a fee-simple deed of conveyance in June, 1914, conveying his plantation to the defendant. This deed is placed with the Bank of Lake City, to be held in escrow until January 1, 1915, at which time it was to be delivered to the defendant by said Bank if the plaintiff did not deposit with it the sum of $3,000.00 to the credit of defendant to be applied to certain mortgage debts of plaintiff, but if the $3,000.00 was deposited with said Bank, as aforesaid, the said Bank was to continue holding the deed until January, 1916, on or before which date, if the plaintiff herein had not paid all sums due the defendant, then the said Bank was to deliver said deed to defendant, who was then to become the absolute owner in fee simple of the land so conveyed in said deed. These conditions, above given, were set out in

full in the escrow agreement entered into between the plaintiff and defendant and signed by them both on June 12, 1914.

The plaintiff did not deposit the $3,000.00 with said Bank on or before January 1, 1915, so defendant went to the Bank and got his deed. Thereafter the plaintiff rented the lands so conveyed from defendant at an agreed rental value per annum. After having so rented it and having paid the rent for several years, he began this action to have the deed declared a mortgage, after having first attempted to pay the defendant the debt due him on the theory that it was a mortgage, but the defendant having clearly made it known, in unmistakable language, that he regarded himself as the absolute owner of the land so conveyed to him, the plaintiff made no further effort to make an actual tender, the defendant having waived his right to demand the tender by his conduct.

The escrow agreement recites, among other things (see last line of page 1 and the top of page 2) : "Whereas, in order to save the grantee (the defendant herein) the costs and expense of foreclosure of said mortgages in the event of default or breach of the terms thereof, said grantor (the plaintiff herein) has this day duly made, executed, and delivered unto the escrow his good and sufficient fee-simple deed of conveyance for said premises, to hold said deed in escrow to and for the uses and purposes hereinafter set forth." So we have here the admission of the defendant himself, who signed the escrow agreement, that the deed in question was given for the purpose of saving the grantor therein the cost and expense of foreclosure. Therefore the deed in question was intended as a mortgage by both parties thereto for the first nineteen months of its existence; that is to say, from June 12, 1914, to January 1, 1916, if all the conditions and provisions of the escrow agreement had been complied with by the plaintiff. How-

ever, notwithstanding this admission, the defendant now claims that the deed originally given as a mortgage automatically was changed into an absolute fee-simple conveyance by operation of the breach of the escrow agreement, under the terms originally agreed upon in said escrow agreement. There was absolutely not one scintilla of evidence, nor is there any contention on the part of the defendant, that any further consideration passed, nothing whatever took place after the original deed and escrow agreement were executed. It seems to me that no better illustration of the maximum, "Once a mortgage, always a mortgage," could be conceived than under the facts in the case before me.

There was considerable testimony taken by me, most of which was to the effect that the land in question had greatly increased in value. There is no doubt of this. The land has probably doubled in value. Some testimony was introduced tending to show that the defendant had told the plaintiff on several occasions that he (the plaintiff) could have his land back whenever he wanted it, if he would pay the defendant what he owed him with interest. But I am of the opinion, and so find, that the defendant made no such statements.

My findings of fact are based entirely on the admitted facts, namely, that the plaintiff had not paid his indebtedness to the defendant or any part of it. I find further, and it is admitted, that, when the plaintiff approached the defendant for the purpose of paying his indebtedness to him, the defendant claimed to be the actual owner of the land and would deal with the plaintiff on no other basis than that he was, in fee simple, and this conduct on the part of the defendant I hold, as a matter of law, relieved the plaintiff of the necessity of making an actual tender of the amount due and that the plaintiff is in the same position in law as if he had made an actual tender.

All other findings of fact are based entirely on the documentary evidence introduced and herewith submitted.

I find as a matter of law that the deed in question was intended as a mortgage by the parties and admitted by the parties to have been given merely as a security for a debt for the first 19 months after its execution. I therefore hold that it is still a mortgage. A cursory discussion of a few cases I think will establish the fact that the conclusions given above are sound under the principles of law laid down by our Court. No citation of authority need be given to sustain that fundamental maximum, "Once a mortgage, always a mortgage," and in the case before us it has been established beyond controversy by the escrow agreement, which is signed by both parties, and which recites that, "Whereas, in order to save the grantee the costs and expenses of the foreclosure of said mortgages, in the event of default or breach of the terms thereof, said grantor has this day duly made, executed, and delivered unto escrow his certain good and sufficient fee-simple deed of conveyance for said premises, to hold said deed in escrow to and for the uses and purposes hereinafter set forth," that the deed in question was intended as a mortgage for the first 19 months of its existence, and that it was automatically to become an absolute fee-simple deed upon default. "When a deed of land, absolute in form, is given and intended as a mortgage only, its legal effect is not changed by an express stipulation of the parties that the title of the grantee shall become absolute and unredeemable on the failure of the grantor to pay the debt secured on the date fixed for such payment. No effect will be given to such an agreement; for the parties cannot thus avoid the necessity of a foreclosure or restrict or prevent the debtor's right of redemption." 27 Cyc., 995. That is what actually was attempted in this case. Of course, the deed and escrow agreement, executed on the same day, are to be

taken together and considered as if they were one instrument. In *Brownlee v. Martin,* 21 S. C., 400, we find the following:

"The law looks with jealousy and suspicion upon all dealings between the mortgagee and mortgagor, from the supposed influence which the former has over the latter. If therefore a deed, absolute on its face, is shown (as it may be shown by parol evidence) to have been executed merely as a security for a debt, * * * it will operate only as a mortgage, and it cannot be converted by any subsequent written agreement into an absolute conveyance, unless such subsequent agreement is based upon a sufficient consideration. and is shown to have been fairly made, without undue influence by the creditor; and the burden of showing this is upon the mortgagee. In other words, it must amount to a sale of the equity of redemption, fairly made, upon sufficient consideration."

These views are fully supported by authority. *Russell v. Southard,* 12 How., 139; 13 L. Ed., 927, recognized in *Lee v. Lee,* 11 Rich. Eq., 582, and followed by *Babcock v. Wyman,* 19 How., 289; 15 L. Ed., 644; *Villa v. Rodriquez,* 12 Wall., 323; 20 L. Ed., 406; *Morgan v. Shinn,* 15 Wall., 105; 21 L. Ed., 87; *Peugh v. Davis,* 96 U. S., 332; 24 L. Ed., 775; *Brick v. Brick,* 98 U. S., 514; 25 L. Ed., 256.

Certainly, if such an instrument cannot subsequently be converted into an absolute conveyance unless based on a sufficient consideration, it cannot in the first instance be so worded that it will automatically be converted. There certainly was no consideration; that is to say, no new consideration. The defendant contends that the cancellation of the debt is sufficient consideration, but this consideration was the moving consideration in the first instance and no new agreement was entered into whatsoever. It seems that the case of *Brownlee v. Martin,* 28 S. C., 364; 6 S. E., 148, decides this point. In *Hall v. Hall,* 41 S. C., 167; 19 S. E.,

300; 44 Am. St. Rep., 696, it was held: "He (the mortgagee) cannot take possession of the land without foreclosure or an open public sale, and any such agreement inserted in the mortgage itself will be held void, as being contrary to the very nature of a mortgage. It is true, that a new and independent agreement between the parties, made subsequently to the execution of the mortgage, for a release of the equity of redemption, if made between competent parties, 'fairly and for a valuable consideration,' will be sustained. But the Court of Equity scrutinizes transactions of that character very narrowly, and, to be sustained, it must appear that the dealing stands disconnected from the original mortgage contract," etc. Now the agreement in this case is certainly not disconnected from the original transaction, nor was there any new or additional consideration for it; nor was there a new agreement. If the deed in question is to be construed an absolute agreement, it is because of what was done between the parties at the time it was given, when the escrow agreement was also signed; for there was absolutely no further transaction between the parties to it and it is certainly true that at the time the deed was executed and this escrow agreement entered into, both the parties considered the two instruments as evidencing a security for the debt only and not as an absolute conveyance. Therefore, if the instrument is to be construed an absolute conveyance, it must have become absolute automatically, by virtue of the terms of the escrow agreement. Defendant's counsel have cited many authorities, but I fail to see their application to the proposition of law here involved. They argue that the defendant could not have sued the plaintiff and obtained judgment against him, for there was no debt due him by the plaintiff. In this I think they are mistaken. "It is generally held that an absolute deed, where executed to secure a debt, may be declared a mortgage in equity and foreclosed as such." Ruling Case Law,

Vol. 19, 265, Par. 33, citing many cases. I know of no better authority than Ruling Case Law.

Under the terms of the escrow agreement, it is expressly provided that if the plaintiff herein had paid the $3,000.00 to the defendant herein on January 1, 1915, and the balance of the debt on or before January 1, 1916, that then the deed in question, held in escrow, should be redelivered to plaintiff, in which case, of course, the absolute fee-simple title would have remained in plaintiff, so, without doubt, the deed was considered a mortgage merely securing a debt up to that time, for it clearly was to have been held in escrow for the first nineteen months after its date to secure a debt due the defendant.

I am therefore of the opinion, and so hold, that the deed herein in question must be construed in connection with the escrow agreement of even date therewith and must be considered and held a mortgage. Hence I respectfully recommend that the defendant be required to re-convey the land in question to plaintiff upon payment to him of the amount due by the plaintiff.

Respectfully submitted, together with the record herein.

S. M. WETMORE,
Special Referee.

Florence, S. C., May 26, 1920.

### DECREE OF CIRCUIT JUDGE

"On June 12, 1914, the plaintiff, the defendant, and the Bank of Lake City entered into an agreement, in which it was recited that the plaintiff was the owner of a tract of land containing 378 acres, located partly in Florence County and partly in Sumter County, that the defendant was the owner, or about to become the owner, of certain mortgages more fully described therein over said tract of land, and that, in order to save the costs and expense of the foreclosure of such mortgages in the event of default in the

payment thereof, the plaintiff had made, executed and delivered upon the Bank of Lake City in escrow a deed, bearing even date with such agreement, to the defendant for the 378-acre tract of land, which was to be delivered to the defendant under circumstances more fully set forth in the agreement. This deed was subsequently delivered by the escrow to the defendant, and the plaintiff entered into a contract with the defendant whereby he rented the land for several years and remained thereon. Thereupon he commenced this suit for the purpose of having the agreement and the deed therein mentioned declared a mortgage, and prayed that he be permitted to pay, with interest, the debt due by him to the defendant and that an accounting be had between him and the defendant.

"The cause in due course was referred to S. M. Wetmore, Esq., as Special Referee, who has rendered a report in which he has fully and correctly set out all of the facts in the cause. These findings of the Referee are therefore adopted as a proper statement of the facts of the case and the sole questions presented for consideration by the Court have to do with the application of the law to the facts so found.

"At the hearing, I was inclined to the view that, while the findings of fact by the Referee were correct, he had erred in his conclusions of law. Since that time, however, I have given the case careful consideration and study and have reached the conclusion that the report of the Referee must be confirmed.

"As I see it, the case properly turns on the construction of the escrow agreement entered into among the plaintiff, the defendant and the Bank of Lake City, on June 12, 1914. At the time this agreement was made, the defendant had taken up and had assigned to him certain mortgages executed by the plaintiff to other parties and in addition had also taken a mortgage from the plaintiff to himself, all of

these mortgages covering the tract of 378 acres of land involved in this suit and the debt secured hereby aggregating $14,196.32. In the escrow agreement it was provided that the plaintiff as the grantor had delivered his deed to the premises in question to the Bank of Lake City in escrow, and that such Bank should deliver the deed to the defendant as the grantee therein on January 1, 1915, unless the plaintiff paid to the defendant on that date the sum of $3,000.00 on the mortgage debt, and, if he did pay such sum of $3,000.00 on such date, then the bank would hold the deed until the 1st of January, 1916, and at that time would deliver it to the defendant if the plaintiff did not pay the defendant all sums then due on the mortgage debt. From this it appears that, if the sum of $3,000.00 was not paid on January 1, 1915, it was the duty of the escrow to deliver the deed to the defendant as the grantee named therein. When the 1st of January, 1916, arrived, the plaintiff was unable to pay to the defendant the sum of $3,000.00, and thereupon the Bank, acting under the escrow agreement, delivered the deed to the defendant. Although the Bank had delivered the deed to the defendant as granted on January 1, 1915, this under the very terms of the escrow agreement did not operate to extinguish the debt, for on the very next page of the agreement we find this statement:

" 'Provided, however, that at any time prior to said 1st day of January, A. D. 1916, said grantor may and the right is hereby given him to pay to the grantee the amount due him by reason of said mortgages, in which event, and upon due proof thereof to the escrow, shall said deed be returned and redelivered unto the grantor.'

"Construing then the escrow agreement as a whole, its meaning is that although the plaintiff failed to pay to the defendant the sum of $3,000.00 on January 1, 1915, and although the deed was delivered to the defendant by the Bank, yet notwithstanding such delivery the debt was still in

existence and the plaintiff would have the right to pay the entire amount due on January 1, 1916, one year after the delivery of the deed to the defendant.

"When the deed was delivered to the defendant, he neither discharged the mortgages on the tract of land nor delivered them to the plaintiff, but he continued to hold them and the deed that he received from the Bank on January, 1915, so that when the defendant received the deed on January 1, 1915, he received it under a distinct written agreement to the effect that the plaintiff would have a right to pay the debt up to January 1, 1916. Hence the deed of June 12, 1914, delivered to the defendant by the Bank on January 1, 1915, having been delivered with the distinct understanding that there was a debt outstanding which could be paid within the year, such deed and the escrow agreement accompanying the same constituted nothing more nor less than an additional mortgage on the premises, and under the maximum, 'Once a mortgage, always a mortgage,' the plaintiff is clearly entitled to the relief he seeks in the present case.

"In the complaint, reference is made to certain verbal understandings and agreements between the parties at the time the deed and escrow agreement were entered into, to the effect that the plaintiff would have the right at any time upon the payment of the debt to redeem. The Referee has found that no such understandings and agreements were made, and the relevant evidence in the case supports such findings. However, this is wholly immaterial in the view I take of the case, for the reason that the status of the parties is to be determined solely by the written contract between them, evidenced by the deed and escrow agreement of June 12, 1914.

"The referee has found that the land on June 12, 1914, was worth approximately the debt owed to the defendant by the plaintiff, and this finding is supported in the evidence,

though the testimony itself shows that since that time it has practically doubled in value, and that, too, without additional improvements being made thereon. I am prepared to hold, and I do not think that our Courts have gone to that extent, that a mortgagor and a mortgagee, after a debt is due, cannot enter into a valid agreement by which the mortgagee is to take the land covered by the mortgage in satisfaction of his debt, especially when the value of the land is approximately the same as the debt secured thereby. However, this principle has no application to the case now under discussion. The contract here being considered debt is due, cannot enter into a valid agreement by which the creditor takes the land in satisfaction of the debt. On the contrary, it is an agreement made by the debtor that, in the event he is not able to pay the debt at some future time, then the title to the property shall become absolute in the creditor; or, in other words, an agreement by the mortgagor that in the event that he does not pay the mortgage on a certain date, the title of the mortgagee to the mortgaged premises shall become absolute. Such an agreement made in advance in a mortgage itself or written on the back of a mortgage in advance of its maturity is invalid, and it is not perceived why it should be valid when written on a separate paper. Such a contract made in advance, to the effect that the title of the mortgagee to the mortgaged premises shall become absolute on the failure of the mortgagor to pay the debt, is against the policy of the law, regardless of how such contract is evidenced. While, therefore, an agreement after the debt is due, entered into between mortgagor and mortgagee for the satisfaction of a debt by the execution of a deed to the morgtagee, may be good and valid, yet such an agreement made in advance cannot be enforced.

"The escrow agreement here involved is open to the further objection that it is unfair and unequitable. By refer-

ence thereto, it will be seen that if the plaintiff paid the
$3,000 on January 1, 1915, but did not pay the remainder
of the mortgage debt on January 1, 1916, the duty of the
escrow would be to deliver the deed to the grantee, whose
title would thereupon become complete.  In this event the
plaintiff would have clearly lost his $3,000 and the defend-
ant would have the $3,000 and the land also.  Clearly such
a contract could not be enforced in a Court of Equity, for
the reason as set forth by the authorities it would tend to
the oppression of the debtor.  Under the terms of such
escrow agreement, it is true the plaintiff was to pay the
balance of the debt on January 1, 1916.  Under the view,
however, that I take of the case, time is not of the essence
of the contract, for the reason that the transaction between
the parties was really a mortgage and it was not compe-
tent for the parties by an agreement in advance to cut off
the plaintiff's right to redemption.

"While it appears that the plaintiff since January, 1915,
has been in possession of the premises under a rent agree-
ment with the defendant, yet no testimony was taken to
show the amount of such rent.  While, therefore, the de-
fendant is entitled to his debt, with the interest thereon,
yet the plaintiff is entitled in the accounting between them
to offset this amount by the amounts of the rents he has paid
for the years he has been in possession under such rent
agreement, and the case will have to be referred back to
the referee to take the proper accounting between the
parties as to these matters.

"It is therefore ordered, adjudged, and decreed, that the
report of the referee be confirmed and made the judgment
of the Court.

"It is further ordered, adjudged, and decreed that the
contract between the parties, evidenced by the deed and
escrow agreement of June 12, 1914, is a mortgage, and that
the plaintiff is entitled to pay, and the defendant is entitled

to collect, the amount of the indebtedness represented thereby, together with the interest thereon up to the date of the final decree in his action.

"It is further ordered, adjudged, and decreed that the plaintiff is entitled to apply as credits on the said mortgage the amount of the rents paid by him to the defendant for the years he has been in possession under the rent agreement, such application to be made as of the dates upon which said payments were made in the respective years.

It is further ordered, adjudged, and decreed, that the cause be, and the same is hereby, referred back to S. M. Wetmore, Esq., as special referee, to state the account between the parties in accordance with the conclusions herein reached, and that he take the same and make his report to this Court with all convenient speed.

It is furthr ordered, adjudged, and decreed, that the the coming in of the report of the referee the parties hereto shall be entitled to such other and further orders as may be necessary to carry out the terms of the report.

"It is further ordered, adjudged and decreed that each of the parties to the cause pay his own costs."

## Exceptions

(1) Because the Circuit Judge erred in holding as matter of law that, under the escrow agreement, the deed of respondent to appellant, dated June 12, 1914, was a mortgage, whereas he should have held that, under said agreement, construed in the light of the conduct of the parties thereto, said deed of conveyance was an absolute conveyance of the tract of land therein described.

(2) Because the Circuit Judge erred in holding that, under the terms of the escrow agreement, the existing past-due mortgage indebtedness was not extinguished by the delivery of the deed in question to appellant, whereas he should have held that said existing past-due mortgage indebtedness was extinguished and satisfied by the execution of the escrow

agreement and the delivery of said deed by the escrow to the appellant.

(3) Because the Circuit Judge erred in holding that, under said escrow agreement, the past-due mortgage indebtedness was not satisfied and extinguished by the execution and delivery of deed in escrow under the escrow agreement, but continued to exist until January 1, 1916, whereas he should have held that, under the terms of said escrow agreement, the past-due mortgage indebtedness was extinguished and satisfied the moment the deed was delivered in escrow under the agreement; there being reserved to the respondent thereunder only the right to repurchase said tract of land under the terms of the agreement.

(4) Because the Circuit Judge erred in holding that, under the express terms of the written escrow agreement, respondent was released from all personal liability to pay his mortgage indebtedness to appellant, and therefore there was no longer any indebtedness to be secured by a mortgage.

(5) Because the Circuit Judge having held that an agreement, entered into after the debt is due, between mortgagor and mortgagee for the satisfaction of the debt by the execution of a deed from the mortgagor to the mortgagee, may be good and valid, erred in not holding that the deed in question is good and valid; it being submitted that the written agreement entered into at the time of the execution of the deed shows that the deed was executed in satisfaction of the past-due mortgage indebtedness.

(6) Because the Circuit Judge erred in holding that the maxim or doctrine, "Once a mortgage, always a mortgage," applies to the agreement here under consideration, whereas he should have held that the agreement for the satisfaction of the mortgage indebtedness by the conveyance of the land by the mortgagor to the mortgagee having been made after the mortgage debt was due, said doctrine has no application here, and said agreement was and is valid.

(7) Because the Circuit Judge erred in holding that the contract in question could not be enforced in a Court of Equity, because it provided that, if respondent paid $3,000 on January 1, 1915, but did not pay the remainder of the amount on January 1, 1916, the duty of the escrow would be to deliver the deed to the grantee, in which event appellant would have $3,000 and the land also; the error being that this question was not raised by the pleadings, and the Court had no right to consider it.

(8) Because the Circuit Judge erred in adjudging said deed a mortgage on grounds other than those raised by the pleadings, it being respectfully submitted that the only reason assigned in the complaint for the deed in question being a mortgage was that there was no other consideration for it than the cancellation of the past-due mortgage indebtedness, and his Honor, having held that no other consideration was necessary, should have sustained the deed in question.

(9) Because the Circuit Judge erred in not holding that respondent, having ratified and approved the delivery of the deed and accepted its terms for a period of more than five years, could not repudiate the agreement and have the deed declared a mortgage.

*Messrs. McNeill & Oliver* and *Lee & Shuler,* for appellant, cite: *Escrow defined:* 10 R. C. L. 621; 16 Cyc. 561; 130 A. L. R. 911; 11 & E. Enc. L. (2nd Ed.) 335; 10 R. C. L. 622; Ann. Cas. 1912B, 340; 90 A. L. R. 716; 130 A. L. R. 939. *Where deed in escrow was held pending payment of mortgage:* 111 A. L. R. 997; 55 A. L. R. 92. *Or giving a mortgage:* 10 R. C. L. 628-9; 11 A. & E. Enc. L. (2nd Ed.) 342; 2 A. L. R. 785. *Maxim "Once a mortgage, always a mortgage" does not apply to agreements between parties subsequent to a mortgage:* 19 R. C. L. 386. 1 *Jones Morts.* (2nd Ed.) Secs. 247, 340; 3 Pom. Eq. Sec. 1193. 2 *Wash. Real Prop.* (3rd Ed.) 66, 67. *Conveyance was in*

*satisfaction of debt*: 55 S. C. 51; 31 S. C. 276; 82 S. C. 555; 100 S. C. 397; 110 S. C. 482; 3 Pom. Eq. Jur., Sec. 1195; 27 Cyc. 1006. *Satisfaction of debt sufficient consideration*: 40 S. C. 163; 41 S. C. 168; 51 S. C. 55. *Conditional sale*: 61 S. C. 575; 19 R. C. L. 266; 1 Jones Mtgs., Secs. 259, 265; Id. 256. *Judgment must be in accord with pleadings*: 23 Cyc. 816, 820; 38 Cyc. 1970; 16 S. C. 579; Ann. Cas. 1918-A, 981; 113 S. C. 495; 16 Cyc. 403.

*Messrs. Willcox & Wilcox, Henry E. Davis,* and *Arrowsmith, Muldrow, Bridges & Hicks,* for respondent, cite: *Instrument a mortgage and not a conditional sale*: 27 Cyc. 970, 972; 19 R. C. L. 269.

April 26, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action to have a deed declared to be a mortgage. Decree below from plaintiff, and defendant appeals.

The controversy arises out of the following facts:

On June 12, 1914, the plaintiff, Brockington, owed the defendant, Lynch, the sum of $14,196.32, evidenced by three notes secured by mortgages, then past due, executed at different times. Brockington was unable to pay, and Lynch was pressing for his money.

On the day mentioned above, Brockington and Lynch entered into what is termed "an escrow agreement." It provided that a fee-simple deed of the premises in question, from Brockington to Lynch, which Brockington had on that day executed, evidently as a part of the transaction then being consummated, should be deposited with the Lake City Bank; that the bank should hold it until January 1, 1915; that if by that date Brockington should deposit with the bank the sum of $3,000 to the credit of Lynch, to be applied to the said debt of $14,196.32, the bank should continue to hold the deed until January 1, 1916; that if by

that date Brockington, having paid the $3,000 by January 1, 1915, should not have paid the remainder of the debt, the deed should be delivered by the bank to Lynch; that if Brockington should fail to pay the $3,000 by January 1, 1915, the deed should at that time be delivered to Lynch as the act and deed of Brockington, and that thereupon Lynch should become the sole and unconditional owner of the premises and entitled to the immediate possession thereof; that during the continuance of the agreement Lynch should not attempt to collect said debt, and should not disturb the possession of Brockington; that if the $3,000 should not be paid by January 1, 1915, or if it should be, and the remainder of the debt should not be paid by January 1, 1916, Lynch would accept the deed in full settlement of the amount represented by the mortgages; that notwithstanding the failure of Brockington to pay the $3,000 by January 1, 1915, and the consequent delivery of the deed and possession of the premises to Lynch, Brockington should have the right to pay the amount of the debt by January 1, 1916, and secure a reconveyance of the premises by Lynch.

After the execution of the deed and escrow agreement, and the delivery of the deed to the Bank, Brockington continued in possession of the premises until January 1, 1915. He failed to make the $3,000.00 deposit by that time, as agreed upon, and shortly thereafter the Bank delivered the deed to Lynch, who, with the knowledge and acquiescence of Brockington, immediately went into possession of the premises, and has ever since treated them as his own property. Brockington rented the premises from Lynch during each of the years 1915, 1916, 1917, 1918, and 1919, paying him regularly the rent agreed upon. He made no claim to the land, or to any right or interest therein, until the fall of 1919, when this action was commenced for the purpose of having the deed declared to be a mortgage and for redemption.

The sole ground upon which the plaintiff's cause of action is based is the allegation that the deed was executed and delivered without any new or additional consideration, other than the mortgage debt.

The defendant in his answer denies that the deed was executed as a mortgage, and alleges, on the contrary, that it was executed and delivered under the terms of the escrow agreement, in full satisfaction of the mortgage indebtedness; he alleges, also, that the amount due upon the mortgages, at the time of the agreement, represented the full value of the premises.

The issues were referred to a Special Referee, who held, with the plaintiff, that the deed should be declared a mortgage. The Circuit Judge confirmed the Special Referee's report, and decreed: (1) That the defendant was entitled to $14,196.32 with interest from the date of the escrow agreement, June 12, 1914; (2) that the plaintiff was entitled to credit upon said mortgage debt for the rents paid by him to Lynch for the years he has been in possession under the rent agreement, that is for the years 1915, 1916, 1917, 1918 and 1919; (3) that the case be recommitted to the Special Referee to state the account between the parties upon the above basis.

From this decree the defendant has appealed upon various exceptions, which fairly raise the issues of law hereinafter discussed and determined.

It is worthy of note, at the threshold of this discussion, that the Circuit Judge recognized the well-established rule that, after a mortgage has become due, there is no legal objection to an agreement between the parties, upon sufficient consideration, which has the effect of changing their relation as mortgagor and mortgagee. He declares:

"I am not prepared to hold, and I do not think that our Courts have gone to that extent, that a mortgagor and a mortgagee, after a debt is due, cannot enter into a valid

agreement by which the mortgagee is to take the land covered by the mortgage in satisfaction of the debt, especially when the value of the land is approximately the same as the debt secured thereby."

He held, however, that this principle had no· application to the case at bar, and adjudged the deed to be a mortgage, upon the grounds: (1) That Brockington had, under the escrow agreement, until January 1, 1916, within which to pay the mortgage debt, and the deed was delivered to Lynch on or about January 1, 1915, before the time limit expired; (2) that the agreement was unfair and inequitable, for the reason that if Brockington should have paid the $3,000.00 by January 1, 1916, and should have failed to pay the remainder of the debt by January 1, 1916, the deed would then have been delivered to Lynch, and Brockington would have lost his $3,000.00 and the land also.

It will be observed that the only ground upon which the plaintiff sought to sustain his contention that the deed was a mortgage was that it was executed and delivered without any new or additional consideration other than the mortgage debt; and that neither of the grounds upon which the Circuit Judge based his decree is suggested in the complaint; the only ground taken by the plaintiff, as we have seen, having been repudiated by the Circuit Judge.

1. The parties to a mortgage have the same capacity to consummate by an executory agreement such a transfer of the property as they may have had the capacity to consummate by an immediate transfer.

In determining the validity of the escrow agreement, it is important to notice the situation of the parties and the object to be accomplished by it. Brockington owed Lynch a large sum of money upon three mortgages then past due; he could not pay them; Lynch was pressing for his money. If Lynch had declined to grant a further extension of credit, there would have been nothing that Brockington

ย

could have done to avoid a foreclosure suit except by agreement with Lynch. This agreement might have taken any one of the following forms: (1) That Brockington should immediately convey the mortgaged premises to Lynch in satisfaction of the mortgages; (2) that Brockington should enter into an executory agreement that if the debt should not be paid by a certain date he would convey the premises in satisfaction of the mortgages; (3) That Brockington should enter into an agreement that a deed to the premises then executed should be placed in escrow to be delivered in satisfaction of the mortgages, in the event that the debt should not be paid by a certain date.

Whatever the parties could immediately consummate, they could contract to consummate in the future, upon such terms and conditions as they might agree upon. The subject matter of the contract is the principal matter to be considered; the means and time of carrying it into effect, whether by an immediate deed, an executory contract without an escrow, or an executory contract with an escrow are matters of subsidiary interest.

"An escrow is a written instrument, which, by its terms, imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee or obligor." 10 R. C. L., 621; 16 Cyc., 561.

"An escrow is a deed delivered to a third person upon a future condition to be performed by either party." 130 Am. St. Rep., 911, and monographic note.

Every element of a valid escrow appears here. There are sufficient parties, a proper subject matter, a consideration, and the parties have actually contracted. The grantor agreed to sell, and the grantee agreed to buy, the land under the conditions stated. Their

minds met; the terms were agreed upon, and the deed would have been delivered as a conveyance of the land, except for the agreement that it be delivered to the escrow to be kept until the conditions mentioned in the agreement were performed, and, if not performed, then to be delivered to the grantee by the escrow. 11 A. & E. Enc. of Law (2nd. Ed.) 336; 10 R. C. L, 622; *Davis v. Brigham,* 56 Or., 41; 107 Pac., 961, Ann. Cas., 1912B, 340, and note; *Clark v. Campbell,* 23 Utah, 569; 65 Pac., 496; 54 L. R. A., 508; 90 Am. St. Rep., 716, and note.

The authorities are uniform in holding that an escrow cannot be revoked, except upon compliance with the terms of the agreement creating the escrow

"An escrow signed, sealed, and deposited upon a valuable consideration is not revocable by the depositor, except according to the terms of the agreement and deposit. The depositary, under such circumstances, is as much the agent of the grantee as of the grantor; and he is as much bound to deliver the deed, on performance of the condition, as he to withhold it until performance." 130 Am. St. Rep., 939, monographic note.

In this case appellant had in the land by way of past due mortgages its full value, and respondent could have entered into a valid agreement with appellant to convey him the land in satisfaction of the mortgage indebtedness, and, if respondent had conveyed him the land under these conditions, he could not afterwards successfully attack the transaction and have the deed declared to be a mortgage. If the respondent could do this, is there any reason why he could not enter into the same agreement with the provision that, instead of delivering the deed to appellant at that time, it should be placed in escrow, to be delivered at a later date, if respondent should not pay the amount mentioned in the agreement at the times stated? In both instances respondent's personal liability to pay the

mortgage indebtedness is extinguished, and the appellant's obligation to accept the deed in satisfaction of the mortgage indebtedness is complete. When respondent entered into this agreement and executed and delivered his deed in escrow under the terms mentioned therein, he could not afterwards recall the deed and have it returned to him without a compliance with the terms thereof.

2. An absolute conveyance, accepted in payment of an existing debt, and not merely as security for it, accompanied by an agreement to reconvey upon payment of a certain sum within a specified time, constitutes a conditional sale and not a mortgage; the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement.

"If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale, and the grantee holds the premises, subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement." 1 Jones, Mtg. (6th Ed.) § 265, citing cases from Alabama, Arkansas, Connecticut, Georgia, Illinois, Indiana, Iowa, Kentucky, Maine, Missouri, Montana, New York, North Carolina, North Dakota, Texas, Virginia, West Virginia, and Wisconsin.

There can be no question but that when the mortgages became past due, it was a perfectly legitimate matter of convention between Brockington and Lynch that Lynch would take the premises for the debt, and that a deed executed by Brockington at that time, in pursuance of that agreement, would have carried a good title to Lynch, and have extinguished the mortgage debt. Section 3460, Vol. 1, Code of Laws A. D. 1912, while providing that the legal title shall remain in the mortgagor,

expressly recognizes the validity of a properly executed re-
lease of the equity of redemption.   As is said in *Simons v.
Bryce,* 10 S. C., 354:

"What is miscalled the equity of redemption is, in fact,
the legal estate in the land, subject to the encumbrance cr
ated by the mortgage, and that the release of the equity of
redemption must be regarded, as Judge Wardlaw says (in
*Mitchell v. Hogan,* 11 Rich., 704), as the conveyance of
the land to him who holds the encumbrance."

If the mortgagor, the holder of the legal title, has not
the right and power, under these circumstances, to con-
vey the land in satisfaction of the mortgage, or any part
of it, it must present the anomalous situation of a man
owning land and unable to dispose of it, a restraint upon
the power of alienation and inseparable incident of his
title.   This power is distinctly recognized in the case of
*Navassa Guano Co. v. Richardson,* 26 S. C. 401, 2 S. E.
307, and in *Tant v. Guess,* 37 S. C. 489, 16 S. E. 472.

"But the maxim (once a mortgage, always a mortgage)
was never intended, and has never been construed, to pre-
vent a mortgagee, by a subsequent contract, from pur-
chasing the equity of redemption, or of obtaining a
release of it, for an adequate consideration.   It must be
for a consideration that would be deemed reasonable if
the transaction were between other parties.   The trans-
action must be fair, with no unconscientious advantage
taken by the mortgagee." 1 Jones Mtg. (6th Ed.) § 340.

Would not Brockington have the  right to  convey  the
property to a third person,  upon  the  consideration  that
such person would assume the payment of the mortgages,
and thus, while not securing his release from them, inter-
pose a guarantor between him and the mortgagee?   If
so, there can be no valid reason, assuming the absence of
inequitable circumstances, why he should not be able to
make a better trade with his mortgagee, securing his abso-
lute release from the mortgages.

It seems to be assumed by jurists who are inclined to construe a deed as a mortgage that in every case that construction is to the advantage of the mortgagor. As a matter of fact, the advantage depends entirely upon the relativity of the mortgage debt to the value of the mortgage property. If the two are exactly equal, it is a matter of indifference to the mortgagor which construction may be adopted. If the debt is greater than the value of the property, it is, of course, to the advantage of the mortgagor that the deed be not construed as a mortgage, and vice versa. The mortgagor should, of course, not be allowed to claim that construction which subsequent events develop to be to his advantage.

The chancellor very properly scrutinizes transactions between a mortgagor and a mortgagee, even after the maturity of the debt, to be assured that the weaker party has been fairly dealt with; that neither his hopes nor his fears have been taken advantage of by the stronger. If the mortgagee has availed himself of his possession of the property, and of the embarrassed condition and physical debility of the mortgagor, to obtain a release of his equity of redemption, or obtain it by fraud or misrepresentation, or by threats, for a grossly inadequate consideration, a Court of Equity will restore the mortgagor's equity of redemption. But if it has been released in good faith, without undue influence of misrepresentation, for a new and adequate consideration, the release, which is perfectly legitimate, will be sustained. 2 Jones, Mort. (6th Ed.) § 1046.

The case of *Hamilton v. Hamer,* 99 S. C. 31, 82 S. E. 997, is a very peculiar one; the conclusion of this Court, announced in an opinion prepared by Mr. Justice Watts, being consistent with the contention of neither party to the action. In that case Hamilton owned a 20-acre tract of land upon which there was a mortgage, and desired to

purchase a tract of 67 acres adjoining; his mortgage
creditor was in extremis financially, was being pressed by
his creditors, and was pressing Hamilton; Hamer agreed
to take up the mortgage for Hamilton and to advance the
money for the purchase of the 67 acres, upon the execution
by Hamilton of a deed conveying both tracts to him and
the delivery by Hamer to Hamilton of a covenant stipulat-
ing that he would reconvey to Hamilton if he paid the
amount advanced at any time within five years, in the
meantime Hamilton to pay rent for the two tracts; the
deed was dated in 1894, and the 5-year limitation expired
in 1899, which appears to have been extended another 5
years expiring in 1904; in 1905, Hamilton tendered to
Hamer the amount advanced and demanded a deed; Hamer
refused, and the suit followed. The peculiar feature of
the decision is that the plaintiff contended that the trans-
action was a mortgage and was upheld by the Master;
the Circuit Judge held that it was not a mortgage but a
contract for a conditional sale, and that, not having com-
plied with the conditions, the plaintiff was not entitled to a
reconveyance; this Court concurred with the Circuit Judge
in holding that the transaction was not a mortgage, that
it was a contract for a conditional sale, and, totally ignoring
the time limitation of the contract, reversed the circuit
decree and remanded the case with directions that Hamer
reconvey to Hamilton upon his repayment of the sum
agreed upon—a conclusion, as suggested above, incon-
sistent with the contention of both the plaintiff and the
defendant. In the opinion of the writer, the exceedingly
able, clear and convincing decree of the Circuit Judge
should have been affirmed.

But be that as it may, the decision is conclusive upon
the case at bar that the transaction between Brockington
and Lynch was not a mortgage, but a contract for a con-
ditional sale; and that upon two grounds the plaintiff

cannot be entitled to recover in this action: (1) Because his contention is that it was a mortgage and not a conditional sale; (2) if a conditional sale, the limitation of compliance has long since expired.

In *McHall v. Hall,* 41 S. C. 169, 19 S. E. 307, it is held that, where it is shown that a mortgage intelligently and voluntarily conveyed to the mortgagor the mortgaged premises on the consideration of the mortgage debt and other indebtedness, the deed will be sustained.

3. The extension of time and the satisfaction of the mortgages were a sufficient consideration for the escrow agreement.

That the parties considered the value of the premises to have been less than the debt is shown by the stated consideration in the agreement:

"To save the grantee (Lynch, not Brockington) the costs and expenses of foreclosure of said mortgages in default or breach of the terms thereof."

It is fair to assume that the parties realized that, in the event of foreclosure, the premises would not bring enough to pay the debt, and that Lynch would be obliged to pay the costs and expenses of sale, and that a judgment for the deficiency would be entered up against Brockington.

Where the debt is practically equal to the value of the land, the satisfaction of the debt, the relief from a possible and probable deficiency judgment, is an adequate consideration. The Court will not permit the mortgagor, after receiving a substantial benefit, as at that time viewed by the parties, to take advantage of a subsequent rise in the value of the property; to hold to his contract, if the value declines, and to repudiate it if it rises.

As Mr. Jones declares (Section 256):

"The grantor is not allowed to speculate upon the chances attending the transaction, and upon finding that

the property is worth the amount of the debt to call a mortgage a conditional sale; or on the other hand, when he finds that the property has increased in value, and that there would be an advantage in redeeming, to call what was actually a conditional sale a mortgage. The character of the transaction is fixed at its inception."

The escrow agreement provided for a plan by which several desired results would be accomplished: Brockington would remain in possession of the premises; he would be allowed 6 months in which to pay $3,000, and 18 months in which to pay the remainder of the debt; a foreclosure would be avoided; Lynch would save the costs and expenses of that foreclosure and sale; Brockington would be saved a deficiency judgment; upon breach of the conditions of the extension of credit, Lynch would take the premises and Brockington would be free of the mortgage.

There is not the slightest suggestion in the pleadings or evidence that Brockington was induced by fraud, misrepresentation, or imposition, in any form, to enter into the agreement, or to execute the deed and leave it with the bank.

The agreement possesses every characteristic of a legal contract: It is made by competent parties, upon a valuable consideration, touching a legal subject-matter; and was fully performed, so far as creating an escrow and concerned by the deposit of the deed with the bank; the matter of its delivery being controlled by the provisions of the agreement.

Upon the contention of the plaintiff that the deed and agreement constituted a mortgage, for the reason (the only one urged by the plaintiff) that no new or additional consideration, other than the original mortgage debt, appeared, the case of *Brown v. Bank*, 55 S. C. 51, 32 S. E. 816, is absolutely conclusive. There the Court said:

"In subdivision 'a' of exception 1, the point is made that the answers having admitted the allegation in the complaint that the relation of mortgagor and mortgagee originally existed between the parties, and alleged no new consideration for the deed of 26th March, 1895, they thereby admitted that said deed was a mortgage. If that deed had been an agreement that the original mortgages should be converted into absolute conveyances, we can well understand how a new consideration would be necessary to the validity of such agreement. But where, as in this case, a creditor holding mortgages on several parcels of real estate to secure the payment of a debt, purchases the mortgaged premises, or rather a part thereof, at a price less than the amount of his debt and takes from his debtor an absolute conveyance, we are not prepared to admit that any new consideration is necessary to the validity of such conveyance; for it is well settled that where the mortgagee purchases the mortgaged premises, at a sale other than for foreclosure of the mortgage, the mortgage debt is thereby extinguished. *Devereaux v. Taft,* 20 S. C. 555, and the cases therein cited; and the same principle applies *pro tanto* where only a portion of the mortgaged premises are purchased. *Trimmier v. Vise,* 17 S. C. 499. If, therefore, any new consideration, as it is called, be necessary, it would be found in the extinguishment of the mortgage debt, either in whole or in part, according to the fact, whether the purchase was in whole or only in part of the mortgaged premises."

This appeal was heard while the late Justice Hydrick was a member of this Court. Upon the brief, in his handwriting, is the following significant memorandum:

"The giving of time was a sufficient consideration. If B. had acquired a large estate and the value of land had gone down, could L. have repudiated the transaction after

he took the deed and have demanded payment of the mortgage debt, interest, and costs?"

The familiar maxim, "Once a mortgage, always a mortgage," is too universal in its terms to be strictly accurate. As long as the original relation of debtor and creditor continues unimpaired, the expression is entirely accurate; it must be understood, however, as applicable alone to that limited condition. That which is originally a security for a debt cannot be converted by a contemporaneous agreement into an absolute conveyance; nor can it, so long as the original status continues, be converted into such by a subsequent agreement except upon a new and valuable consideration. It is apparent, however, that the universality of the maxim fails, when the purpose of a subsequent agreement is to terminate the relation of debtor and creditor; when, by such subsequent agreement, the creditor surrenders his rights as a creditor, and the mortgagor his rights as the holder of the legal title, the engagement of one forming the consideration for the engagement of the other. To still insist upon the application of the maxim would be to deny to the parties the right of freedom of contract and to the mortgagor the right to dispose·of his property as his interest or pleasure might dictate.

4. The continuance of the relation of debtor and creditor, after the execution of the contract, was an essential element in establishing the relation of mortgagor and mortgagee by the contract and deed.

It is exceedingly important to emphasize the fact that the mortgages were then past due, and that any arrangement between the parties looked, not to the creation of the relation of creditor, but to the creation of a new status, presumably for the mutual advantage of the parties, or for the advantage of either with detriment or risk of it to the other.

"There is a test generally accepted as decisive, and this is the mutuality and reciprocity of the remedies of the parties; that is to say, if the grantee enjoys a right, reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage; while, if he has no such right to compel payment, the transaction is a conditional sale." 19 R. C. L. 266.

An exceedingly clear statement of the rule in such cases is found in *Adams v. Pilcher,* 92 Ala. 474; 8 South. 757, as follows:

"If the parties intended a sale, whether in payment of an antecedent debt or a present consideration paid, with the right to repurchase within a specified time, and for an agreed price, the purchaser becomes the owner of the property, and the vendor of the right to repurchase, if he sees proper to do so. No obligations rest upon the grantor to do so. It is optional whether he will or not. If he declines to do so, the vendee has no cause of action against him, either by reason of money paid, or for the debt satisfied by the conveyance. If there remain in the vendee a cause of action for the money paid, or, in the other case, for the antecedent debt, this will determine the transaction to have been intended as a mortgage, not an absolute conveyance. It is not left optional with the grantor to determine whether he owes a debt to the grantee or not, and, by his election to owe a debt to the grantee, convert a sale with the right of repurchase into a mortgage. His power to elect to repurchase or redeem exists only where there is a sale with the right to repurchase. If a mortgage was intended by the parties, the debt exists, whether he consents or not, and the mortgagee has the same legal authority to enforce the instrument as a mortgage as the grantor to have the instrument declared a mortgage."

The Circuit Judge holds in substance that the debt was still in existence, by reason of the agreement that, although Brockington may have failed to make the $3,000.00 payment by January 1, 1915, he had the right to pay the amount due upon the mortgage by January 1, 1916, and demand a return and redelivery of the deed, which may have been delivered to Lynch on January 1, 1915.

This is a *non sequitur,* unless it appeared that, notwithstanding the agreement on the part of Lynch to take the land for the debt, and his acceptance of the deed under the agreement, he still could have sued Brockington upon the mortgage.

In order to keep the mortgages alive, "to continue the debt in existence," it was essential that notwithstanding the agreement Brockington was still liable to pay the mortgages, a condition that could not possibly obtain in view of the express agreement on Lynch's part that he would accept the deed "in full settlement of any and all sums due to him by said grantor, by reason of said mortgages as principal, interest or otherwise." The reference to the payment by Brockington "of the amount due him by reason of said mortgages," was a convenient method of fixing the amount which Brockington might pay to secure a redelivery of the deed, and in no sense represented an obligation on his part to pay.

That Brockington after the delivery of the deed by the bank to Lynch, was under no obligation to pay the mortgages, is shown by his unquestionable right to demand a cancellation and satisfaction of the mortgages as soon as Lynch accepted the deed from the bank, under the terms of the agreement.

The fact that Brockington's only claim is that there was no new consideration for the deed is an admission that no new debt was intended to be created at the time the agree-

ment was entered into, or that a new mortgage, which he claims the deed to have been, was contemplated.

In the case of *Francis v. Francis,* 78 S. C., 178; 58 S. E., 804, it appears that, at the initiation of the transaction between Francis and Loyns, Francis borrowed a sum of money from Loyns and executed a deed of the premises to him, taking back a contract to reconvey if the debt was paid by a certain time. The Court held that this constituted a mortgage. The distinction between that case and the case at bar is that there the papers were executed at the time the debt was contracted, while here the debt was past due.

In *Brown v. Bank,* 55 S. C., 51; 32 S. E., 816, the Court says:

"But in addition to this, when the pleadings show * * * that the bank already held mortgages not only upon all the property covered by the deed, but also upon an additional piece of property, * * * it seems impossible to conceive that the bank would take another mortgage upon only a portion of the property already covered by mortgages in favor of the bank; and yet the contention of plaintiffs rests upon that theory."

In *Hodge v. Weeks,* 31 S. C., 276; 9 S. E., 953, Hodge owed Weeks a past-due debt; he made him a deed to the premises under a verbal agreement to reconvey upon payment of the debt with interest and taxes; in a few weeks thereafter, Weeks put the agreement in writing; Weeks went into possession and held it for ten years and until his death. The heirs of Hodge then brought suit to declare the deed and agreement a mortgage. The Court held that as the conveyance had cancelled the debt there could be no mortgage and dismissed the complaint, quoting from Pomeroy as follows:

"The practical test is, whether there is a liability, independent of the conveyance and contract of conveyance, which the grantee can enforce against the grantor. * * *

But if this antecedent debt is wholly satisfied and extinguished by the conveyance, so that no liability remains under any circumstances against the grantor, then there is no mortgage, since there is no debt to be secured thereby."

The case of *Creswell v. Smith,* 61 S. C., 575; 39 S. E., 757, is practically "on all fours" with the case at bar. Creswell owned the land and owed Dendy a past-due mortgage debt. Creswell could not pay and Dendy was pressing. At the same time and as a part of the same transaction, Creswell made Dendy a deed to the premises, and Dendy gave Creswell a covenant allowing him to remain on the land as a tenant and stipulating that, if Creswell should within five years pay to Dendy the amount of what was termed "the purchase money of the land," but which was actually the debt then past due, Dendy would reconvey. The contention was that the transaction amounted to a mortgage by Creswell to Dendy, but this Court held otherwise:

"It is clear that the parties intended an absolute conveyance, with an agreement to lease and reconvey upon the payment of a specified sum. The consideration of the deed was the cancellation of the then existing mortgage debt. In the absence of positive evidence, it is unreasonable to suppose that the parties having already a mortgage should merely intend to substitute another for the same amount. It is shown in *Hodges v. Weeks,* 31 S. C., 281, which quotes with approval from 3 Pomeroy, Eq. Jur., 1195, that the fundamental characteristic of a mortgage is that it is a security for a debt, that a debt is essential to a mortgage. In this case the mortgage debt was extinguished by the conveyance, and no liability remained on said debt which Robinson and Dendy could enforce. The Creswells did not agree to pay anything absolutely except the stipulated rent, which is wholly inconsistent with the view that they retained titles to the premises."

In the case of *Brown v. Bank,* 55 S. C., 51; 32 S. E.,

816, Brown was indebted by mortgages to the bank; he conveyed to the bank several parcels of real estate; the bank gave him a covenant to reconvey upon payment of certain money. Brown contended that the transaction was a mortgage and brought suit to redeem. Upon several considerations this Court held that the deed was an absolute one upon its face with a covenant to reconvey and not a mortgage; relying upon the general rule of presumption which had not been overcome by proof of a contrary intention; that all the circumstances connected with the situation of the parties and their stipulations pointed to such a deed. A circumstance strongly relied upon by the Court was the existence of past-due mortgages and the improbability of the bank's intention to take a new mortgage when it already possessed such security—a circumstance which has a parallel in the case at bar.

In the case of *Bryan v. Boyd,* 100 S. C., 397; 84 S. E., 992, it was held that the foreclosure of the mortgage extinguished the debt (pro tanto), and, if the relation of debtor and creditor existed after the sale, it must have been created by some other agreement, as to which there was no evidence, nor any to show that the mortgagor thereafter acknowledged the existence of any debt to the mortgage; there was no debt and hence nothing to secure." There can be no difference between a foreclosure sale and a conveyance directly by the mortgagor so far as this question is concerned.

In *Shiver v. Arthur,* 54 S. C., 184; 32 S. E., 310, it is held:

"The fact that Arthur had a mortgage on the land when the deed was executed tends to show that it was not his intention to take another mortgage."

5. The delivery of the deed in pursuance of the escrow agreement, the surrender of possession by Brockington to Lynch, and the contract of lease

and payment of rent are conclusive upon the question of a contract for a conditional sale when the deed was delivered by the bank to Lynch, with the knowledge and consent of Brockington, and Brockington entered as tenant of Lynch and paid rent for five succeeding years, he abandoned all claim to redemption, even if the original transaction had created the relation of mortgagor and mortgagee. In *Lewis v. Cooley,* 81 S. C., 461; 62 S. E., 868, it is held:

. "On the contrary, the delivering up on the bond for title and the giving of the rent notes, which defendant testified he understood to be rent notes, afford evidence of insistence on the part of the plaintiff and recognition on the part of the defendant that the relation was that of landlord and tenant. A written contract of sale may be rescinded and a rent contract substituted even by parol."

In *Shiver v. Arthur,* 54 S. C., 184; 32 S. E., 310, it is said:

"If the deed were intended simply as a mortgage, the plaintiff was entitled to the possession of the land and the rents and profits thereof. Her conduct was wholly inconsistent with that of a mortgagor. She does not allege that the land was put in the possession of the grantee in order that the rents and profits might extinguish her indebtedness."

6. The plaintiff had no right to recover upon a theory not supported by allegations in his complaint.

There were only two material issues made by the pleadings, one of law and one of fact. Paragraph 9 of the complaint alleges that at the time of the acceptance of the deed from the bank, and at sundry times afterwards appellant promised to let respondent redeem the land, etc. This was denied in the answer and this made the issue of fact. This issue was decided against respondent by both the Referee and the Circuit Judge. The issue of law was made by the allegations of Paragraphs 8 and 12 of the

complaint and the denial of the same by the appellant. These allegations are to the effect that the deed was a mortgage because there was no other consideration for it than the mortgage indebtedness, which necessarily means that the deed was executed in satisfaction of the mortgage indebtedness. The Referee decided this issue in favor of respondent, holding that an additional consideration was necessary. The Circuit Judge held with appellant on the issue of law. In the Court below appellant, therefore, won on both issues raised by the pleadings.

A judgment must accord with and be warranted by the pleadings of the party in whose favor it is rendered. If it is not supported by the pleadings, it is fatally defective. 23 Cyc., 816.

"A judgment upon a subject within the jurisdiction of a Court, but which is not brought before it by any statement or claim of the parties, and is foreign to the issue submitted, is void." 23 Cyc., 820.

"The determination as to whether a finding is within or without the issues is to be made by an examination of the pleadings. A finding for plaintiff must be responsive to the theory of the complaint, as shown by the allegations contained therein." 38 Cyc., 1970.

Here, respondent alleged that the deed was executed in satisfaction of the mortgage debt, and claimed that it was a mortgage only because there was no other consideration for it. The respondent and the Court are bound by the allegations and theory of the complaint. Notwithstanding the allegations of the complaint, the Circuit Judge held that, when appellant received the deed from the bank on January 1, 1915, he received it with the understanding that the debt was outstanding and could be paid at any time within the year 1915. In making this holding, the Circuit Judge gave the pleadings and the agreement a different construction and theory from that claimed

by respondent. Respondent challenged the transaction upon one legal ground only, as pointed out above, and the Court was bound by the issue tendered. This should be true because respondent's complaint, as shown, involves an admission contrary to the holding of the Circuit Judge; and certainly admissions in the pleadings cannot be contradicted. *Lupo v. True,* 16 S. C., 579.

Again, the Circuit Judge held that the contract could not be enforced in equity because it provided that, if respondent paid $3,000.00 on January 1, 1915, but did not pay the remainder of the amount on January 1, 1916, it was the duty of the escrow to deliver the deed to the grantee, in which case appellant would have the $3,000.00 and the land also. This issue was not raised by the pleadings. Respondent based his cause of action upon the single, certain, and definite point that the deed was a mortgage because there was no other consideration for it than the mortgage indebtedness. That was the only legal issue submitted to the Court. It was not asked to decree the contract void as being inequitable, and this formed no part of respondent's cause of action.

As we understand the rule, there can be no recovery upon a cause of action that is in substance variant from that which is pleaded by the plaintiff. *Lumber Co. v. Geiger,* Ann. Cas., 1918A, 981.

In *Fanning v. Stroman,* 113 S. C., 495; 101 S. E., 861, this Court held that the Circuit Judge erred in submitting to the jury an issue that was not made by the pleadings.

The rule in equity is the same as the rule at law. A party cannot state one case or defense in his pleadings and make a different one by his proofs. 16 Cyc., 403.

A bill cannot be framed on one theory and a recovery had on another theory. 16 Cyc., 404, and note.

Respondent did not allege that the contract was unfair and inequitable, and did not ask the Court to declare it void or refuse to enforce it on that ground.

However this may be, the question as to whether the contract in this case was equitable or inequitable cannot arise at this time, for the reason that respondent never offered to comply with it within the time limited by it. In other words, he did not pay the $3,000.00 on or before January 1, 1915. If he had paid this amount, and had then been unable to pay the balance by January 1, 1916, and appellant had declared or attempted to declare a forfeiture of his rights because of such failure, then this question could have been presented to the Court for its determination; but, since he did not do so, the question is now purely speculative. In other words, it is an abstract or hypothetical question, which the Court should not have passed upon, and which, as above stated, was not before it. 2 Cyc., 533.

Briefly stated, our conclusions, based upon the foregoing authorities, are:

1. That, while a mortgagor may not at the time he secures a loan on his land cut off his right to redeem by any instrument executed at that time, still he may by a subsequent agreement release his equity of redemption, or convey the mortgaged premises to the mortgagee in satisfaction of the mortgage indebtedness, and this does not violate the rule, "Once a mortgage, always a mortgage."

(2) That a mortgagor may, by a deed delivered in escrow after maturity of the debt, convey the mortgaged premises to the mortgagee in satisfaction of the mortgage debt, and, upon his failure to comply therewith and delivery of the deed by the escrow, the title vests in the grantee.

(3) That respondent having delivered the deed in escrow after maturity of the debt, under an agreement fairly and honestly made, and having failed to comply with the agreement, and the deed having been delivered, appellant

is the owner of the land, and should be so declared by this Court.

(4) That the deed under consideration cannot be declared to be a mortgage for the reason that it was executed in satisfaction of the past-due mortgage indebtedness, and there was no debt to be secured by a mortgage.

(5) That the effect of the delivery of the deed on January 1, 1915, under the escrow agreement, was to convey the land to appellant in satisfaction of the indebtedness, with the right to respondent to repurchase for the amount of the indebtedness by January 1, 1916, which did not constitute a mortgage, but a sale.

(6) That the deed cannot be declared to be a mortgage upon an issue or issues not made by the pleadings.

Let the agreement, report of Referee, decree of Circuit Judge, and exceptions be reported.

The judgment of this Court is that the judgment appealed from be reversed.

MR. CHIEF JUSTICE GARY dissents.

MR. JUSTICES WATTS and FRASER concur in the result.

MR. JUSTICE FRASER:    I concur with Mr. Justice Cothran in result only.

It is well known law that a contract, whatever may be its form, if intended as a security for a debt, is in law a mortgage. It is equally true that the nature of a contract is fixed at the time of its execution. When the escrow was placed in the hands of the bank, its nature was fixed. When the escrow was delivered to the bank, it was to be held to await the payment or nonpayment of the debt. The transaction, as a whole, was intended to secure the debt. The fate of the deed depended upon the payment of the debt. To my mind, it is clear that the deed was security for the debt, and therefore a mortgage. The freedom to contract is not limitless. Men are free to contract only within the limits set by the law. It has been

truly said that the State is a party to all contracts and those contracts are void to which the State does not consent. The State, through its laws, declares that a deed, however absolute its terms may be, is to be taken only as a mortgage, if intended as security for a debt.

There is another principle of law that I think controls this case. The law recognizes the fact that, although a right may exist in favor of certain parties, yet there are cases in which it would be inequitable and unjust to allow it to control. That gives rise to what is known as the law of estoppel. The law of estoppel forbids the tenant to dispute the title of his landlord. In the case at bar, the plaintiff had acknowledged for years that the relation of landlord and tenant existed between him and the defendant. I think it would be inequitable and unjust to allow him now, after these repeated acknowledgments, to repudiate that relation. I think the Court of equity should refuse its aid in working what would now be a great injustice. I think the plaintiff is now estopped from setting up his title.

For these reasons, I concur in result with MR. JUSTICE COTHRAN.

MR. JUSTICE WATTS concurs.