## 13794

SMITH *ET AL.* v. GEORGIA POWER CO.

(173 S. E., 297)

Before GREENE, J., Oconee, December, 1929.

*Messrs. Colquitt, Parker, Troutman & Arkwright, Haynsworth & Haynsworth* and *Hughs & Hughs,* for appellant,

*Messrs. R. T. Jaynes* and *W. C. Mann,* for respondent,

March 5, 1934.

The opinion of the Court was delivered by MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE.

This action was brought on December 18, 1929, and damages against the defendant were demanded in the sum of $2,400.00 for injury to land and damage to crops during the years 1927, 1928 and 1929 by reason of overflow of the lands

of the plaintiffs, thereby damaging the crops and also rendering the bottom lands unfit for cultivation by being waterlogged during the same years. In the lump sum of $2,400.00 as damages are included the land damage for those years above mentioned, the crop damage for the same period, and punitive damages. The negligence and willfulness alleged as the basis of both actual and punitive damages refer to the conduct of the defendant in so far only as the waters of Tugaloo River are concerned. There was no motion made to make the complaint more definite and certain by specifically stating the amount of land damage nor the crop damage for each year. The verdict of the jury was in favor of the plaintiffs, crop damage $926.73, land damage, $225.00, total, $1,151.73. Judgment upon this verdict being entered, this appeal was taken by the defendant.

The above is a brief summary of some of the leading facts, but other facts must be understood for a proper understanding of the points involved.

Tugaloo River, being one of the principal branches forming the Savannah River, the other branch being the Senecca River, is the dividing line between upper South Carolina and Georgia. It is formed by the confluence of the Tallulah River and the Chattooga. Upon the Tallulah the defendant has a series of four dams, and upon the Tugaloo it has two dams; none being on the Chattooga. The two dams on Tugaloo are, of course, below the four dams on Tallulah; the lower one, called Yonah, being about seven miles above the lands of the plaintiffs.

During the month of August, 1928, the territory drained by these rivers and their tributaries was subjected to an unprecedented rainfall, and all lands in the neighborhood of the stream were flooded. The plaintiffs claim that at the height of the flood the sand gates, or sluice gates, of Yonah Dam were raised by the defendant, a vast amount of additional water, clear in appearance, was loosed into the channel of Tugaloo, and the crop damage for the year 1928 resulted.

Just what this crop damage amounted to in dollars and cents does not appear. The plaintiffs say that they made only 10 per cent. of a crop in 1927 and not over 10 per cent. in 1929. In 1928 they claim to have lost the entire crop. They further say what was the accustomed yield in both cotton and corn for those years, but there is no proof of the market value of the crops or of the cost of production. All of this was left to the members of the jury to exercise their own independent knowledge.

The allegation of the complaint as to the cause of the damages sustained by the plaintiffs is thus set forth in Paragraph 9 of the complaint: "9. That by reason of said unlawful, negligent, careless, willful, wanton, unnatural and unreasonable use of the waters of Tugaloo River by defendant as above alleged, plaintiff has been damaged to date, by said damage to his said bottom lands and the crops growing thereon for the three years above alleged, in the sum of Twenty-Four Hundred ($2,400.00) Dollars."

At the close of the testimony for the plaintiffs, the defendant moved for a nonsuit as to the crop damage for 1928 upon the ground that "the only inference to be drawn from the testimony is that the damage, if any, was the result of the excessive flood and there is no evidence that the Defendant in any manner contributed to it."

A like motion for a directed verdict was made at the conclusion of the testimony, and upon the same ground a motion for a new trial was made after the rendition of the verdict. All of these motions were refused, and the exceptions charge error thereupon.

There are only four exceptions, and these may be divided and considered under two heads: First, the refusal of the presiding Judge to withdraw from the consideration of the jury the alleged crop damage of 1928; and, second, alleged error on the part of the Circuit Judge in charging certain requests to charge submitted by the plaintiffs.

Under the conditions of the pleadings, as above pointed out, we have no way of knowing upon what basis the jury found its verdict. It may have omitted from consideration the crop damage of 1928 entirely and based its finding upon the crop damage done in the years 1927 and 1929 only. Basing our conclusion as to this statement upon the earnestness with which counsel presented his argument in this Court against the liability of his client for crop damage in 1928, we may safely suppose that he was equally as vehement in his address to the jury upon the same ground. And who knows but what he convinced the jury of the correctness of his view, although he could not convince the Circuit Judge. But the verdict may have been rendered solely upon the crop damage of 1928 and the years 1927 and 1929 omitted from consideration. As to these matters there is no possible solution. The position taken by the attorney for the defendant in regard to the crop damage for 1928 is plausible and, we think, conclusive. Bearing in mind that the allegations of the complaint charged the defendant with a delict only as to its conduct at Yonah Dam, let us examine the record in order to ascertain the proof offered by the plaintiffs. They introduce in evidence the logbooks of the various dams as exhibits, and, while these exhibits are not printed in the transcript, they are recognized as correct by the attorneys for both plaintiff and defendant. From the statements made by the attorneys, based upon these logbooks, we gather these undisputed facts: The damage being alleged to have occurred on the evening and the morning of August 15 and 16, 1928, the logbook of Yonah Dam shows that on August 15th at 4 o'clock p. m. the water was barely flowing over the dam, being only four-tenths of an inch above the dam. At 4:25 p. m. and 4:35 p. m. the two sluice gates were opened, and at 5 p. m. the water over the top of the dam had risen to four and three-tenths feet above the dam. At 6 p. m. there was an additional rise of one and six-tenths feet, making a total of five and nine-tenths feet above

the top of the dam. The water running over the dam continued to rise, although the sluice gates were open until it reached a height of seven feet. At 8 o'clock on the morning of the 16th the sluice gates were closed, and the water was then three feet over the crest of the dam. It would therefore appear that the opening of the gates could not possibly have put more water into the channel. The continued rising of the water over the crest of the dam while the gates were open would preclude any idea that the opening of the gates increased the flow.

It would therefore appear that the logbooks introduced by the plaintiffs would negative all idea that the alleged negligent and willful act of the defendant in opening the sluice gates had any bearing whatever upon the flood in Tugaloo River and the conduct of the defendant in opening the sluice gates is charged as being the cause of the flood water.

We are therefore of the opinion that there was no evidence to sustain the allegation that the misconduct of the defendant at Yonah Dam caused damage to the 1928 crops and that the Circuit Judge erred in not withdrawing this element of damage from the jury, as requested by the defendant. There being nothing in the finding of the jury to show that crop damage from 1928 was assessed, we cannot say as matter of law that such damage was or was not assessed. Especially is this true when there was no separate evidence as to the actual damage sustained to the crops in each individual year.

The Circuit Judge, at the request of the plaintiffs, charged three requests, all pertaining to the defense, called "the act of God." The defendant alleges error on the part of the Circuit Judge in charging these requests. There is no complaint as to the correctness of the law as charged, but it is urged that the act of God is an affirmative defense which was not set up as a defense in the answer, and that to charge a defense not pleaded is error of law in

that, by so charging, the burden of establishing a defense not pleaded is cast upon the defendant.

It is not deemed necessary to set out in full the three requests above referred to, and hence only one of these requests will be included herein. It is as follows: "I charge you that where an act of God is pleaded as a defense to an action brought by one against another, for acts alleged to have caused such injury, the burden is upon the one pleading the act of God as a defense, to show not only that the act of God was the cause, but that it was the entire cause, because it is only when the act of God is the entire cause, that the one pleading such defense can be shielded."

All three of the requests pertaining to the act of God were charged by the presiding Judge, although he qualified his charge of these requests by saying that they were charged in connection with his entire charge.

There are two lines of decisions based upon definite principles of law applicable to a situation of this nature. The one is declared in cases like *Fanning v. Stroman,* 113 S. C., 495, 101 S. E., 861, followed in *Brockington v. Lynch,* 119 S. C., 273, 112 S. E., 94, to the effect that it is error on the part of the presiding Judge to submit to the jury an issue not raised by the pleadings. The other line of cases sustained by numerous cases, such as *Plunkett v. Insurance Co.,* 80 S. C., 407, 61 S. E., 893, followed in *Vollington v. Southern Paving Co.,* 166 S. C., 448, 165 S. E., 184, is to the effect that a misstatement of issues made by the Circuit Judge in his charge to the jury should be called to his attention.

It is true the answer of the defendant did not directly plead the act of God as a defense, but the whole course of the evidence was predicated upon the unusual and unprecedented character of the rainfall. The motion for nonsuit as to the crop damage of 1928 was based upon the sole ground that, as before stated, the only inference which could be drawn from the testimony was that a natural flood caused the damage and that the defendant was free from negli-

gence. It would thus appear that the defendant was endeavoring to obtain the benefit of the defense of act of God without so pleading. If, therefore, the Circuit Judge charged the defense upon which the defendant was relying, even though such defense had not been pleaded, the defendant should not be heard to complain. No objection was made to the charge. After charging repeatedly that the burden of proof was on the plaintiffs to prove their case by the preponderance of the evidence, the Circuit Judge asked the usual question as to whether he had overlooked any question of law to which his attention should be called. No mention was made of error in the charge as now claimed to be the subject for reversal.

Under all the circumstances of this particular case, the method of trial, and the character of evidence produced, we prefer to follow those cases which make it incumbent upon attorneys to call the attention of the presiding Judge to any misstatement of the issues as raised by the pleadings, whether such issues, so misstated, be of law or of fact. The exceptions in regard to the charge are therefore overruled.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and the cause remanded to that Court for a new trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.